UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DANIELLE ROSENFELD and VINCENT
GARCIA, on behalf of themselves and all others
similarly situated,

Plaintiffs,

-against-

TARA LENICH; CITY OF NEW YORK; LU-
SHAWN M. THOMPSON, AS
ADMINISTRATOR OF ESTATE OF KENNETH
P. THOMPSON; ERIC GONZALEZ; MARK
FELDMAN; WILLIAM SCHAEFER; BRIAN
DONOHUE; WILLIAM POWER; MICHAEL
DOWLING; JOSEPH PIRAINO; and ROBERT
KENAVAN,

Defendants.

**MEMORANDUM & ORDER
18-CV-6720 (NGG) (PK)**

NICHOLAS G. GARAUFIS, United States District Judge.

Named Plaintiffs Danielle Rosenfeld and Vincent Garcia bring
this putative class action against former Kings County District At-
torney ("KCDA") prosecutor Tara Lenich, the City of New York
("the City"), and several current or former employees of the City
and the KCDA (the "Individual City Defendants"), on behalf of
themselves and all other persons or entities whose communica-
tions were illegally wiretapped by Ms. Lenich over a period
spanning June 2015 to November 2016. Plaintiffs claim that they
are entitled to statutory damages under Title I of the Electronic
Communications Privacy Act of 1986, known as the Wiretap Act.
*See* 18 U.S.C. 2520, *et seq.* After previously reaching a settlement
agreement with Ms. Lenich, Plaintiffs have now agreed to settle-
ment terms with the City and the Individual City Defendants

1

(collectively, the "City Defendants"). Before the court is Plaintiffs' unopposed Motion for Preliminary Approval of a Class Action Settlement. (*See* Mot. for Prelim. Approval of Settlement ("Mot.") (Dkt. 95).)

For the reasons stated below, Plaintiffs' motion is GRANTED.

## I.   BACKGROUND

### A.   Factual Background

The court takes the following factual background and allegations from Plaintiffs' Complaint. (*See* Compl. (Dkt 1).) During the period relevant to this case, Ms. Lenich was a Kings County Assistant District Attorney and the Deputy Chief of Special Investigations of Violent Criminal Enterprises for the Kings County District Attorney. (*Id*. ¶¶ 1, 10.) Her responsibilities in that role included oversight of wiretaps relating to narcotics, firearms, vice, and gang investigations. (*Id*. ¶ 10.) Beginning in or around June 2015, and continuing for a period of approximately 18 months, Ms. Lenich repeatedly forged the signatures of various New York State Supreme Court Justices on orders that purported to authorize wiretaps of cellular telephones belonging to two of Ms. Lenich's coworkers, Assistant District Attorney Stephanie Rosenfeld and New York Police Department Detective First Grade Jarrett Lemieux. (*Id*. ¶¶ 1, 52, 58-59, 61, 65-66.) Using these forged judicial orders, Ms. Lenich illegally intercepted and recorded telephone calls and text messages occurring over Ms. Rosenfeld's and Det. Lemieux's telephones. (*Id*. ¶¶ 59-60, 66-67.)

Among the communications intercepted through the wiretaps of Ms. Rosenfeld's telephone were dozens of communications between Ms. Rosenfeld and her sister, Plaintiff Danielle Rosenfeld. (*Id*. ¶¶ 8, 59.) Among the communications intercepted through the wiretaps of Det. Lemieux's telephone were several communications between Det. Lemieux and his uncle, Plaintiff Vincent

Garcia. (*Id.* ¶¶ 9, 66.) All told, Plaintiffs estimate that Ms. Rosenfeld's and Det. Lemieux's communications with over 350 unique phone numbers were intercepted and recorded as part of the scheme. (Mem. in Supp. of Pls.' Mot. ("Mem.") (Dkt. 95-6) at 8 n.3.)

Ms. Lenich was arrested on November 28, 2016. (Compl. ¶ 69.) She pleaded guilty to two counts of illegal interception of communications, in violation of the Wiretap Act, and she was sentenced to one year and one day in prison. (*Id.* ¶¶ 69, 71.)

### B.  Procedural History

The law firms Emery Celli Brinckerhoff & Abady LLP ("Emery Celli") and Wiggin and Dana LLP ("Wiggin") filed suits against Lenich and the City Defendants on behalf of Stephanie Rosenfeld and Det. Lemieux, respectively. (Mem. at 6.) Recognizing that numerous other individuals—those whose communications with Ms. Rosenfeld and Det. Lemieux had been intercepted and recorded—had viable claims under the Wiretap Act that would soon be time-barred, Emery Celli and Wiggin together brought this putative class action, with Danielle Rosenfeld and Mr. Garcia as named plaintiffs. (*Id.* at 7.) Named Plaintiffs filed their complaint on November 26, 2018, one day before the applicable statute of limitations expired. (*Id.*) The Complaint asserts three claims for statutory damages under the Wiretap Act: one each against Lenich, the City, and the Individual City Defendants. (*Id.*; Compl. ¶¶ 104-122.)

On April 15, 2019, the City Defendants filed a Motion to Dismiss, in which they argued, *inter alia*, that the Individual City Defendants were entitled to qualified immunity and that municipalities could not be held liable under the Wiretap Act, which applies only to violations committed by a "person." (Mem. of Law in Supp. of Mot. to Dismiss (Dkt. 53) at 14, 17 (quoting 18 U.S.C. § 2511(1)).) The Motion to Dismiss remains pending. Over the

3

next few months, the parties exchanged written discovery, litigated issues relating to electronic discovery, and jointly sought to determine the size of the putative class by interviewing a wiretap expert familiar with the KCDA's system. (Mem. at 9-10.) They participated in a settlement conference with Magistrate Judge Peggy Kuo on July 30, 2019. (*Id.* at 9.)

In January 2020, the Named Plaintiffs and Ms. Lenich agreed to settlement terms. (*See* Notice of Voluntary Dismissal (Dkt. 78).) The court granted the City Defendants leave to brief the issue of whether notice should be provided to the putative class prior to Ms. Lenich's dismissal from the case, but subsequently stayed briefing of that motion at the parties' request. (*See* Request for Pre-Mot. Conference (Dkt. 79); Jan. 31, 2020 Minute Entry; Mot. to Stay (Dkt. 86); Order Granting Mot. to Stay (Dkt. 87).) The City Defendants and Named Plaintiffs continued settlement discussions, and they reached an agreement in principle on February 14, 2020. (*See* Mot. to Stay Discovery (Dkt. 85).)

On August 7, 2020, Named Plaintiffs filed a Motion for Preliminary Approval of a $3.2 million class settlement agreement with the City Defendants. (*See* Mot.; Mem. at 11.) The Settlement Agreement defines the Settlement Class as "[a]ll persons or entities, including the Class Representatives, whose wire or electronic communications with Stephanie Rosenfeld's personal cellular phone and/or with Jarrett Lemieux's personal cellular phone were intercepted using the [wiretap] system at the Kings County District Attorney's Office during the Class Period." (Settlement Agreement (Dkt. 95-3) ¶ 36.) An "entity" (non-human) belongs to the Settlement Class only if the human person who used the entity's phone number cannot be identified. (*Id.*) Stephanie Rosenfeld and Jarrett Lemieux are not included in the Settlement Class. (*Id.*)

The Settlement Agreement calls for the $3.2 million award to be distributed among class members based on the number of each

member's communications that were intercepted, according a system of "Award Units": a class member with one intercepted communication is assigned 6 Award Units; a class member with at least two but no more than ten intercepted communications is assigned 7.5 Award Units; a class member with at least eleven but no more than 100 intercepted communications is assigned 10 Award Units; and a party with more than 100 intercepted communications is assigned 15 Award Units. (*Id.* ¶ 45.) The minimum value of an Award Unit is $756, and the maximum value is $1,000, depending on how many class members in each category submit timely claims. (*Id.*; Proposed Notice to Class (Dkt. 95-3) at ECF p. 40, 44-45.) Thus, every class member will receive at least $4,536 and no more than $15,000.

## II.  LEGAL STANDARD

A class action settlement is generally approved in two stages, pursuant to Federal Rule of Civil Procedure 23(e). At the preliminary approval stage, a court makes an initial evaluation of fairness prior to notifying the class; at the final approval stage, "notice of a hearing is given to the class members, and class members and settling parties are provided the opportunity to be heard on the question of final court approval." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 27 (E.D.N.Y. 2019).[1] In considering whether to grant preliminary approval, the court "must review the proposed terms of settlement and make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* The court's role in reviewing a proposed settlement is "demanding" because litigation is presumed to be less adversarial after the parties agree to settlement terms. *Id.* But while courts "need not grant preliminary approval" in every case, they must "remain mindful . . . of

_____

[1] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

the strong judicial policy in favor of settlements, particularly in the class action context." *Id.*

Rule 23(e) establishes the standards applicable to approval of class action settlements. If the court finds at the preliminary approval stage that it "will likely be able to . . . approve the proposal under Rule 23(e)(2)" and "certify the class for purposes of judgment on the proposal," it "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Thus, to grant preliminary approval the court must consider the factors relevant to final approval and certification, and it must conclude that it is likely to find that those factors are satisfied.

In evaluating the fairness, reasonableness, and adequacy of the proposed settlement, courts in this Circuit have traditionally considered several factors known as the "*Grinnell* factors": (1) the expense, complexity, and likely duration of the litigation; (2) the class's reaction to the settlement; (3) the stage of the proceedings and amount of discovery completed; (4) the risks of establishing damages; (5) the risks of establishing liability; (6) the risks of maintaining the class throughout the litigation; (7) defendants' ability to withstand greater judgment; (8) the range of reasonableness of the settlement amount considering the best possible recovery; and (9) the range of reasonableness of the settlement amount given the risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001).

In 2018, Federal Rule of Civil Procedure 23 was amended to set forth specific factors relating to the court's approval of a class settlement. Subject to Rule 23(e)(2), as amended, the court may grant final approval of a proposed class action settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate" after considering whether:

(A)   the class representatives and class counsel have adequately represented the class;

(B)   the proposal was negotiated at arm's length;

(C)   the relief provided for the class is adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

    (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)   the proposal treats class members equitably relative to each other.

The factors listed in paragraphs (A) and (B) are "procedural" factors that address "the conduct of the litigation and of the negotiations leading up to the proposed settlement," whereas the factors listed in paragraphs (C) and (D) are "substantive" factors that address the "relief that the settlement is expected to provide to class members." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. The court construes these factors as clarifying and supplementing the *Grinnell* factors, rather than displacing them. *See id.* ("The goal of this amendment is not to displace any factor, but rather to focus . . . on the core concerns of procedure and substance that should guide the decision."); *Payment Card*, 330 F.R.D. at 29 ("The court understands the new Rule 23(e) factors to add to, rather than displace, *Grinnell* factors . . . [and] considers both sets of factors . . . in its analysis.")

Rule 23 also requires that the court consider whether "giving notice is justified by the parties' showing that the court will likely be able to . . . certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(ii). Thus, "[b]efore approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Am. Intern. Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012). "[T]he court must assess whether the proposed class satisfies Rule 23(a)'s four threshold requirements": (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Id.* (citing Fed. R. Civ. P. 23(a).) "The district court must also determine whether the action can be maintained under Rule 23(b)(1), (2), or (3)." *Id.* Rule 23(b)(3), applicable in this case, requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

If the court determines that notice to class members is "justified by the parties' showing that the court will likely be able to" approve the proposed settlement and certify the class, it "must direct notice in a reasonable manner to all class members who will be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i), (ii). Rule 23 requires that the court direct "the best notice that is practicable under the circumstances" to members of the proposed class. Fed. R. Civ. P. 23(c)(2)(B).

## III. DISCUSSION

### A. Preliminary Approval of the Proposed Settlement

In seeking the court's preliminary approval of the proposed settlement agreement, Plaintiffs ask that the court decide to give notice to class members based on its judgment that it will likely be able to (1) grant final approval of the proposal and (2) certify

the class for purposes of settlement. Fed. R. Civ. P. 23(e)(1)(B). As explained below, the court finds that it will likely be able to find that both criteria are satisfied, and it therefore grants Plaintiffs' motion for preliminary approval.

### 1. The Court Will Likely Be Able to Approve the Proposal as Fair, Reasonable, and Adequate

Taking into account both the procedural and substantive factors set forth in Federal Rule of Civil Procedure 23(e)(2), as well as the *Grinnell* factors,[2] the court concludes that it will likely be able to approve the parties' proposed settlement agreement as fair, reasonable, and adequate.

### a. Adequate Representation by Class Representatives and Class Counsel

In determining the adequacy of class representatives and counsel, courts consider "whether (1) plaintiff's interests are antagonistic to the interests of other members of the class and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).[3] An adequate class representative is one who has "an interest in vigorously pursuing the claims of the class" and "no interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006). "A conflict or potential conflict alone will not … necessarily defeat class certification—the conflict must be fundamental." *Id.*

---

[2] One of the *Grinnell* factors, the class's reaction to the proposed settlement, cannot be considered until after notice has been provided to the class. Accordingly, the court does not consider that factor at this stage of the proceedings.

[3] Because this factor is "nearly identical to the Rule 23(a)(4) prerequisite of adequate representation in the class certification context," the court utilizes Rule 23(a)(4) case law to guide its assessment of this factor. *Payment Card* at 330 F.R.D. at 30 n.25.

First, there is no indication that the Named Plaintiffs have interests that conflict with those of the putative class members. Each class member, including Named Plaintiffs, suffered the same type of alleged injury: their private communications with Stephanie Rosenfeld or Jarrett Lemieux were intercepted and recorded without their knowledge or consent. The court therefore has no reason to doubt the compatibility of the class representatives' and putative class members' interests.

Second, Plaintiffs' attorneys are well regarded and highly capable, and they have demonstrated throughout this litigation that they are competent to represent the class. Crucially, they preserved the putative class members' claims, which would have otherwise expired, by initiating this action just before the end of the applicable statute of limitations. Both Emery Celli and Wiggins have a wealth of experience handling complex class actions, and their attorneys on this case have a wealth of relevant experience. The court is therefore satisfied that Plaintiffs' counsel is adequate.

### b. *Negotiation at Arm's Length*

A class settlement "reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation" is entitled to a "presumption of fairness." *In re GSE Bonds Antitrust Litig.*, No. 19-cv-1704 (JSR), 2019 WL 6842332, at *2 (S.D.N.Y. Dec. 16, 2019). Involvement by a mediator in settlement negotiations also supports a finding of procedural fairness. *Id.* Here, the parties engaged in extensive arm's-length negotiations and participated in a full-day mediation conference overseen by Magistrate Judge Kuo. Under these circumstances, the court finds no reason to doubt that the settlement negotiations were conducted at arm's length.

c.   *Adequate Relief for the Class*

In evaluating whether the settlement provides adequate relief for the putative class, the court must consider "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class …; (iii) the terms of any proposed award of attorney's fees …; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The court considers each of these factors and, as explained below, finds that on balance they weigh in favor of preliminary approval.

i.   Costs, Risks, and Delay of Trial and Appeal

The first factor set forth under Rule 23(e)(2)(C), the "costs, risks, and delay of trial and appeal," "subsumes several *Grinnell* factors," including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial. *Payment Card*, 330 F.R.D. at 36. Courts favor settlement when it "results in substantial and tangible present recovery, without the attendant risk and delay of trial." *Id.*

Class action suits "have a well-deserved reputation as being most complex." *Id.* In order to recover damages for the class absent settlement, Plaintiffs would need to defeat the City Defendants' Motion to Dismiss, which raises a challenge to municipal liability under the Wiretap Act that has not been decided in this Circuit, but which finds support in recent decisions from courts in other Circuits. *See, e.g., Seitz v. City of Elgin*, 719 F.3d 654, 656-60 (7th Cir. 2017); *Doe v. Fed. Democratic Republic of Ethiopia*, 189 F. Supp. 3d 6, 12-15 (D.D.C. 2016). Even if Plaintiffs cleared that hurdle, they would likely need to survive summary judgment, prevail at trial, and secure an affirmance of their victory on appeal in order to recover damages. Moreover, they would also need to certify and maintain the class, over the City Defendants' possible opposition. Thus, litigating this case to a final judgment

would likely take years, require several rounds of motion practice and extensive discovery, and require both parties to expend considerable time and resources, and Plaintiffs would face a substantial likelihood that the effort and expense of litigating to a final judgment would not result in any recovery.

Because the court finds that the risks, costs, and delay of trial and appeal would be significant, it concludes that this factor weighs heavily in favor of preliminary approval of the proposed settlement.

> ii. Effectiveness of Proposed Method of Distributing Relief

Rule 23(e)(2)(C)(ii) requires that the court consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims." An adequate method is one that can "deter or defeat unjustified claims" without imposing an undue demand on class members. Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. A plan for allocating settlement funds "need not be perfect." *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007). Rather, it "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

Under the parties' proposed allocation plan, each member of the settlement class would be assigned a *pro rata* share of the settlement fund on the basis of their "Award Units," which in turn are assigned based on the number of the class member's communications that were intercepted. This allocation plan appears to be rational and fair, as it treats class members equitably while taking into account variations in the magnitude of their injuries. Because the parties have a list of phone numbers that participated in intercepted communications, and because they will work to

identify the individual class members associated with each phone number, there is negligible risk that claims will be made by individuals who do not properly belong to the class and a high likelihood that any unjustified claims would be detected and defeated. This factor therefore weighs in favor of preliminary approval.

### iii.   Terms of Proposed Award of Attorney's Fees

The court must also consider "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). The Settlement Agreement leaves to the court's discretion the amount of attorney's fees that will be allocated to class counsel, but specifies that the award will not exceed $1,066,066—or one-third of the total settlement amount. (Settlement Agreement ¶ 40.)

"[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2013). Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are "well within the range of reasonableness." *Marroquin Alas v. Champlain Valley Specialty of N.Y., Inc.*, No. 15-cv-441 (MAD), 2016 WL 3406111, at *9 (N.D.N.Y. June 17, 2016); *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013); *Willix v. Healthfirst, Inc.*, No. 07-cv-1143, 2011 WL 754862 (RER), at *6-7 (E.D.N.Y. Feb. 18, 2011); *Clark v. Ecolab, Inc.*, Nos. 07-cv-8623, 04-cv-4488, 06-cv-5672 (PAC), 2010 WL 1948198, at *8-9 (S.D.N.Y. May 11, 2010); *Westerfield v. Wash. Mut. Bank*, Nos. 06-cv-2817, 08-cv-0287 (JMA), 2009 WL 5841129, at *4-5 (E.D.N.Y. Oct. 8, 2009).

Additionally, should the court find that a fee award of 33% is not justified in this case, it has the discretion to award a lower amount. Similarly, because the court will determine the award, it may also determine the appropriate timing for payment. Given

13

that the terms of the proposed award are specifically reserved to the court's discretion, they pose no obstacle to preliminary approval.

### iv.   Other Agreements by the Parties

In evaluating whether the proposed agreement affords class members adequate relief, the court must consider any other agreements "required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(iv). Rule 23(e)(3) requires that the parties "identify[] any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Here, the parties have not entered into any agreements other than the Settlement Agreement that has been submitted for approval. (*See* Mem. at 22-23.) Accordingly, this factor poses no obstacle to preliminary approval.

### d.   *Equitable Treatment of Class Members Relative to Each Other*

Rule 23(e)(2)(D) requires that the court consider whether the proposed settlement agreement "treats class members equitably relative to each other." In doing so, the court may weigh "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

As discussed above, the parties' proposed agreement provides for the apportionment of the settlement funds among putative class members on a *pro rata* basis that takes into account the number of times their communications were intercepted—and, thus, the severity of their alleged injury under the Wiretap Act. In this way, the agreement appropriately and fairly accounts for the key point of differentiation among class members' claims. See *Payment Card*, 330 F.R.D. at 47 (finding that a "*pro rata* distribution scheme is sufficiently equitable"); *Christine Asia Co., Ltd. v. Ma*,

No. 15-MD-2631 (CM) 2019 WL 5257534 at *15 (S.D.N.Y. Oct. 16, 2019) (same); *Padovano v. FedEx Ground Package Sys.*, No. 16-CV-17 (FPG), 2019 U.S. Dist. LEXIS 107092, at *13 (W.D.N.Y. June 10, 2019) (same). Additionally, because "the scope of the release applies uniformly to putative class members," it "does not appear to affect the apportionment of the relief to class members." *Payment Card*, 330 F.R.D. at 47. (*See* Settlement ¶ 1.28.)

### e. Ability of Defendants to Withstand Greater Judgment

Under the *Grinnell* analysis, the court also considers Defendants' ability to withstand a greater judgment than that provided for in the proposed settlement. That factor is largely irrelevant here, however, because the Wiretap Act limits each plaintiff's statutory damages to $10,000. *See* 18 U.S.C. § 2520(c)(2). The parties estimate that the size of the class is no greater than 351, the number of unique phone numbers from which communications were intercepted; it is likely to be smaller, given that certain class members may have used more than one phone number and that other phone numbers may be associated with automated notification services. (Mem. at 22.) In order to recover more than the settlement amount through continued litigation, at least 320 separate plaintiffs—more than 90% of the total class, and perhaps close to or more than 100% of the total class—would need to successfully recover the maximum statutory damages. Under these circumstances, it is virtually impossible that Defendants would face greater judgment, and therefore their ability to withstand such a judgment is not relevant to the court's analysis.

### f. Range of Reasonableness in Settlement Fund

Under *Grinnell*, the court considers both "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of

15

litigation." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013). These factors are "often combined for purposes of analysis." *Payment Card*, 330 F.R.D. at 47-48. "In considering the reasonableness of the settlement fund, a court must compare the terms of the compromise with the likely rewards of litigation." *Id.* at 48. The range of reasonableness for a settlement is "a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005).

As discussed above, with a class that does not exceed 351 members and statutory damages capped at $10,000 per plaintiff, the proposed settlement amount of $3.2 million at least approaches and perhaps even exceeds the best possible recovery. Courts in this Circuit commonly find that settlements for less than half of potential damages are within the range of reasonableness. *See, e.g., GSE Bonds* at *4 (finding a settlement valued at 10.9 percent to 21.3 percent of the total possible recovery to be reasonable). Under the terms of this settlement agreement, Plaintiffs recover *at least* 91.4% of the possible statutory damages.[4] Furthermore, as discussed above, Plaintiffs' ability to recover damages at trial would be complicated by the many risks of litigation, including the possibilities that Defendants could prevail on a motion to dismiss, prevail on a motion for summary judgment, prevail at trial, prevail on appeal, or successfully oppose class certification. In light of these attendant risks and the best possible recovery, the

---

[4] The Wiretap Act also allows successful plaintiffs to recover actual compensatory damages as an alternative to statutory damages. *See* 18 U.S.C. § 2520(c)(2). However, given that the class consists of individuals who communicated with the targets of the illegal wiretaps—Stephanie Rosenfeld and Jarrett Lemieux—but were not themselves the intended wiretap targets, the court agrees with Plaintiffs that few, if any, members of the class could establish actual compensatory damages greater than $10,000. (*See* Mem. at 19 n.6.)

court is satisfied that it will ultimately find the settlement amount to be within the range of reasonableness.

Taking into consideration all of the aforementioned factors, as set forth in Rule 23(e)(2) and *Grinnell*, the court is persuaded that it will likely be able to approve the proposed settlement as fair, reasonable, and adequate.

### 2. The Court Will Likely Be Able to Certify the Class for Purposes of Judgment on the Proposal

In order to conclude that giving notice to the putative class is justified, the court must also determine that it will likely be able to certify the class for purposes of judgment on the proposal. "Before approving a class settlement agreement, a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Am. Int'l Grp*, 689 F.3d at 238. Rule 23(a) sets forth four prerequisites for class certification: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). The Second Circuit "has also recognized an implied requirement of ascertainability in Rule 23, which demands that a class be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *In re Petrobras Sec.*, 862 F.3d 250, 260 (2d Cir. 2017).

Additionally, the court must find that certification is appropriate under Rule 23(b), which lays out three alternative "types" of class actions that may be maintained. Plaintiffs contend that certification is appropriate under Rule 23(b)(3), which applies if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."
Fed. R. Civ. P. 23(b)(3).

Looking to the factors for class certification under both Rule
23(a) and Rule 23(b)(3), the court expects that it will be able to
conditionally certify the class for settlement purposes.

      *a.   Rule 23(a) Requirements*

In assessing the appropriateness of certification under Rule
23(a), the court considers five requirements: numerosity, com-
monality, typicality, adequacy of representation, and
ascertainability. Here, each of these factors weighs in favor of
certification.

      i.   Numerosity

"[N]umerosity is presumed at a level of 40 members." *Consol.
Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).
In establishing numerosity, "[a] plaintiff need not present a pre-
cise calculation of the number of class members and it is
permissible for the court to rely on reasonable inferences drawn
from available facts." *Hill v. City of New York*, 136 F. Supp. 3d
304, 353 (E.D.N.Y. 2015). While the precise size of the class has
not yet been determined, Plaintiffs have identified 351 unique
phone numbers associated with the putative class. Accordingly,
the class consists of approximately 351 members, far above the
threshold necessary to presume numerosity.

      ii.   Commonality and Typicality

Rule 23(a)'s commonality requirement is "satisfied if plaintiffs
demonstrate that the class members have suffered the same in-
jury," such that the resolution of certain issues in the case "will
affect all or a significant number of the putative class members."
*Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015).
"Where the same conduct or practice by the same defendant
gives rise to the same kind of claims from all class members, there

is a common question." *Id.* The "[t]ypicality requirement is satisfied when each class member's claim arises from the same course of events and makes similar legal arguments to prove the defendant[s'] liability." *Shahriar v. Smith & Wollensky Restaurant Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011). The typicality requirement is "not highly demanding," because "the claims need only share the same essential characteristics and need not be identical." *Payment Card*, 330 F.R.D. at 53.

Here, all putative class members possess identical claims against the same defendants, arising out of the same pattern of conduct, and pursuant to the same statute. Accordingly, all class members have common issues of law and fact, and Plaintiffs will likely be able to establish the requirements of commonality and typicality.

### iii. Adequacy of Representation

As discussed in Section III.A.1.a, *supra*, the court will likely find that the proposed class is adequately represented.

### iv. Ascertainability

In evaluating the "implied Rule 23 requirement of ascertainability," courts find that "a class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras*, 862 F.3d at 257. Here, the putative class consists of persons whose communications with Stephanie Rosenfeld and/or Jarrett Lemieux were intercepted by Ms. Lenich's unlawful use of wiretaps. The parties have identified 351 phone numbers that were involved in the relevant communications, and only individuals and entities associated with those phone numbers fall within the boundaries of the class. The court is therefore likely to find that the class is sufficiently ascertainable.

### b. *Rule 23(b)(3) Requirements*

"Rule 23(b)(3) imposes two additional burdens on plaintiffs attempting to proceed by class action, namely, predominance and

superiority." *Sykes v. Mel S. Harris & Assocs. LLC,* 780 F.3d 70, 81 (2d Cir. 2015). Rule 23(b)(3) sets forth four factors that are "pertinent" to the court's assessment of predominance and superiority:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the likely difficulties of maintaining a class action.

Fed. R. Civ. P. 23(b)(3).

"[T]he settlement class presents no management problems because the case will not be tried." *In re Am. Intern. Grp.,* 689 F.3d at 239 (quoting *Sullivan v. DB Invs., Inc.,* 667 F.3d 273, 335 (3d Cir. 2011)). Therefore, "[s]ome inquiries essential to litigation class certification," including the issue of "manageability—how the case will or can be tried, and whether there are questions of fact or law that are capable of common proof," "are no longer problematic in the settlement context." *Id.*

As explained below, the court concludes that it will likely find that Plaintiffs have adequately established predominance and superiority.

### i.    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623 (1997). "Predominance is satisfied if resolution of some of

20

the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). "Because predominance and manageability overlap, the existence of a settlement that eliminates manageability problems can" make "the predominance inquiry . . . easier to satisfy in the settlement context." *In re Payment Card*, 330 F.R.D. at 56. Even so, "the certifying court must still determine whether the legal or factual questions that qualify each class member's case as a genuine controversy are sufficiently similar as to yield a cohesive class." *In re Am. Intern Grp.,* 689 F.3d at 240.

Here, the claims of all potential class members involve identical legal and factual questions, including arguments against liability raised by the defendants in their motion to dismiss—such as the issue of whether municipal liability is cognizable under the Wiretap Act, and the issue of whether the individual defendants are entitled to qualified immunity—that are relevant to the claims of all class members. Accordingly, the court will likely find that common factual and legal questions predominate over individual issues.

### ii. Superiority

Rule 23(b)(3)'s superiority requirement may be satisfied when "the costs of bringing individual actions outweigh the expected recovery," and when consolidation "will achieve significant economies of time, effort and expense, and promote uniformity of decision." *In re US FoodServ. Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013). Here, the costs of bringing individual actions would be burdensome for potential plaintiffs who belong to the putative class: with statutory damages capped at $10,000, individual class members would be unlikely to deem the effort and expense of litigation worthwhile. Indeed, class counsel brought

this action because they recognized, with the expiration of the relevant statute of limitations fast approaching, that the costs outweighed the incentives for putative class members to litigate their claims individually. Separate actions would also be burdensome and inefficient for Defendants and for the court, and they would create the possibility of divergent outcomes. Accordingly, the court expects to find that the superiority requirement is satisfied.

Because the court finds, after considering all relevant factors and requirements, that it "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal," it grants preliminary approval of the proposed settlement and concludes that notice to "all class members who would be bound by the proposal … is justified." Fed. R. Civ. P. 23(e)(1)(B).

### B.   Notice Procedures

Once the court has determined that it will likely be able to approve the proposed settlement and certify the class, it must "direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Such notice includes "individual notice to all members who can be identified through reasonable effort" and "must clearly and concisely state in plain, easily understood language:"

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores*, 396 F.3d at 113. While "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements[,] the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* at 114. Adequate notice is notice that "may be understood by the average class member." *Id.* "Courts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it describes the terms of the settlement generally, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." *In re Payment Card*, 330 F.R.D. at 58.

Plaintiffs propose to work with the City Defendants, and with Stephanie Rosenfeld and Jarrett Lemieux, to identify the names and addresses of class members associated with each phone number in the City's metadata. (Mem. at 12.) They also propose that, to the extent necessary, they will seek subpoenas of telephone providers to identify class members associated with relevant phone numbers. (*Id.*) Once class members are identified, they will be notified of the settlement by direct mail, text message, and phone. (*Id.*) Claim forms will be mailed to class members and made available on a website. (*Id.*) These proposed methods of identifying class members and providing them with notice of the settlement, taken together, are robust and well-suited to the unique circumstances of this case. Accordingly, the court finds the proposed methods of notice to be satisfactory.

The Proposed Notice explains in clear language class members' legal rights and options, including straightforward and thorough instructions on how to submit a claim, exclude oneself from the action, object to the settlement, or decline to participate, as well

as the consequences of pursuing or not pursuing each option. (Proposed Notice (Dkt. 95-3 at ECF pp. 40-51) at 2, 4-7, 8-9.) The Proposed Notice provides informative context for the settlement, summarizes the action, defines the class, and describes the proposed settlement and plan of allocation. (*Id.* at 3-5.) It also provides information on the final approval hearing and guidelines as to how potential class members may attend. (*Id.* at 8-9.) Because the Proposed Notice fairly apprises prospective class members of the terms of the settlement and the options that are available to them, the court finds it to be adequate.[5]

### C. Appointment of Class Counsel

Named Plaintiffs' counsel asks the court to appoint them as class counsel, pursuant to Federal Rule of Civil Procedure 23(g). Subject to that rule, the court must consider four factors in appointing class counsel: "the work counsel has done in identifying or investigation potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

As noted above, Named Plaintiffs' counsel are highly experienced and knowledgeable in matters concerning class litigation and civil rights. The same counsel competently and successfully represented Stephanie Rosenfeld and Jarrett Lemieux in a related matter, arising from the same underlying facts and raising similar claims under the Wiretap Act. The court is confident that Named Plaintiffs' counsel will fairly and adequately represent the interests of the class, and it therefore appoints them as class counsel.

---

[5] The court also approves RG2 Claims Administration LLC to serve as the claims administrator, as requested by Plaintiffs. (*See* Mem. at 13, 34.)

### D.  Final Approval Procedures

Plaintiffs suggest that the Fairness Hearing be held no sooner than 230 calendar days after the entry of this Order. (Proposed Notice ¶ 9.) The parties have conferred with the court's Deputy regarding counsel's availability; based on those conversations, the court schedules the Settlement Hearing for September 23, 2021 at 10:00 a.m. The hearing will be held by videoconference. The court adopts the schedule of deadlines proposed by Plaintiffs, as set forth in the annexed Order.

## IV.  CONCLUSION

For the reasons stated above, Plaintiffs' (Dkt. 95) motion for preliminary approval of a proposed class settlement, preliminary class certification, appointment of class counsel, and approval of the proposed notice procedures and class administrator is GRANTED. The court ADOPTS Plaintiffs' proposed schedule of events related to the Fairness Hearing and will hold the hearing by videoconference on September 23, 2021 at 10:00 a.m.

SO ORDERED.


Dated:     Brooklyn, New York
           February 4, 2021


                              /s/ Nicholas G. Garaufis
                              NICHOLAS G. GARAUFIS
                              United States District Judge