UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIELLE ROSENFELD and VINCENT GARCIA, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> -against- <br><br> TARA LENICH; CITY OF NEW YORK; LU-SHAWN M. THOMPSON, AS ADMINISTRATOR OF ESTATE OF KENNETH P. THOMPSON; ERIC GONZALEZ; MARK FELDMAN; WILLIAM SCHAEFER; BRIAN DONOHUE; WILLIAM POWER; MICHAEL DOWLING; JOSEPH PIRAINO; and ROBERT KENAVAN, <br><br> Defendants. | No. 18 Civ. 6720 (NGG) (PK) |


**MEMORANDUM OF LAW IN SUPPORT OF THE PLAINTIFF CLASS'S MOTION FOR FINAL APPROVAL**


Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000


Wiggin and Dana LLP
437 Madison Avenue, 35th Floor
New York, New York 10022
(212) 490-1700

TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ..................................................................................iii-vi

INTRODUCTION .................................................................................................1

BACKGROUND ..................................................................................................3

      A.      Procedural Background.................................................................3

      B.      The Settlement Agreement ........................................................8

      C.      Settlement Administration .........................................................10

               1.      Identification of and Notice to the Original Class Members .........11

               2.      Identification of and Notice to the Voicemail Class Members......12

               3.      Claims Filed ...................................................................13

ARGUMENT .....................................................................................................14

  I.    THE SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT
      IS FAIR, REASONABLE, AND ADEQUATE ....................................................14

      A.      Named Plaintiffs and Class Counsel Have Adequately Represented
             the Class..................................................................................15

      B.      The Settlement Was Negotiated at Arm's Length ......................16

      C.      The Relief Provided Is Adequate ...............................................17

               1.      The Relief Provided Is Adequate in Light of the Costs, Risks,
                       and Delay of Trial and Appeal......................................17

               2.      The Settlement Provides for an Effective Method of Payment
                       to the Class ...................................................................17

               3.      Any Award of Attorneys' Fees and Costs Will Not Diminish
                       the Class Relief ............................................................18

               4.      No Agreements Require Disclosure Under Rule 23(e)(3).............19

      D.      The Settlement Treats All Class Members Equitably...............19

      E.      The *Grinnell* Factors Also Support Final Approval ..................19

  II.  THE RULE 23 CLASS SHOULD BE FINALLY CERTIFIED ...............................22

i

A. The Settlement Class Meets the Requirements of Rule 23(a) ..................23

1. The Class Is so Numerous that Joinder Is Impracticable ..............23

2. The Class Satisfies Commonality and Typicality .........................23

3. The Class is Adequately and Fairly Represented .........................24

B. The Settlement Class Meets the Requirements of Rule 23(b)(3) .............24

1. Common Questions of Law and Fact Predominate ......................25

2. A Class Action is the Superior Method for Resolving This Case ......................................................................................25

III. THE COURT SHOULD AWARD THE REQUESTED ATTORNEYS' FEES AND COSTS ...........................................................................................26

A. The Goldberger Factors Support Class Counsel's Fee Application ..........27

1. Class Counsel's Time and Labor ...................................................27

2. Magnitude and Complexities of the Litigation .............................28

3. Risk of Litigation ..........................................................................29

4. Quality of Representation ..............................................................30

5. Fee in Relation to Settlement ........................................................32

B. The Lodestar Crosscheck Supports the Requested Award ......................34

C. Class Counsel's Expenses Should Be Reimbursed..................................35

IV. THE NAMED PLAINTIFFS SHOULD BE AWARDED SERVICE AWARDS ......36

A. Significant Risks ...................................................................................37

B. Significant Time and Effort ..................................................................37

C. Ultimate Recovery ...............................................................................38

CONCLUSION...................................................................................................39

TABLE OF AUTHORITIES

**Cases**

*Abbott v. Vill of Winthrop Harbor*,
    205 F.3d 976 (7th Cir. 2000) ............................................ 5

*Adams v. City of Battle Creek*,
    250 F.3d 980 (6th Cir. 2001) ........................................... 28

*Anderson v. City of Columbus*,
    374 F. Supp. 2d 1240 (M.D. Ga. 2005) ................................. 5

*Berkson v. Gogo LLC*,
    147 F. Supp. 3d. 123 (E.D.N.Y. 2015) ............................... 37

*Betances v. Fischer*,
    304 F.R.D. 416 (S.D.N.Y. 2015) ...................................... 31

*Brack v. MTA New York City Transit*,
    No. 18 Civ. 846, 2019 WL 8806149 (E.D.N.Y. Apr. 26, 2019) ........... 32, 33

*Brown v. Kelly*,
    244 F.R.D. 222 (S.D.N.Y. 2007) ...................................... 31

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) .................................................. 25

*Chambery v. Tuxedo Junction Inc.*,
    No. 12 Civ. 06539, 2014 WL 3725157 (W.D.N.Y. July 25, 2014) ......... 22, 36

*Charles v. Opinion Access Corp.*,
    No. 16 Civ. 6868, 2020 WL 9812930 (E.D.N.Y. Mar. 13, 2020) ......... 38

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .......................................... 20

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ........................................... 23

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ......................................... 15, 25

*D'Alauro v. GC Services, Ltd. P'ship*,
    168 F.R.D. 451 (E.D.N.Y. 1996) ....................................... 25

*Davis v. J.P. Morgan Chase & Co.*,
    827 F. Supp. 2d 172 (W.D.N.Y. 2011) .................................. 35

*Denney v. Deutsche Bank AG*,
　　443 F.3d 253 (2d Cir. 2006)................................................................. 15

*Dial Corp. v. News Corp.*,
　　317 F.R.D. 426 (S.D.N.Y. 2016) ......................................................... 20

*Doe v. Fed. Democratic Republic of Ethiopia*,
　　189 F. Supp. 3d 6 (D.D.C. 2016) ......................................................... 17

*Dornberger v. Metro. Life Ins. Co.*,
　　203 F.R.D. 118 (S.D.N.Y. 2001) ......................................................... 39

*Drimal v. Tai*,
　　786 F.3d 219 (2d Cir. 2015)................................................................. 32

*Goldberger v. Integrated Res., Inc.*,
　　209 F.3d 43 (2d Cir. 2000).......................................................... *passim*

*Green v. Wolf Corp.*,
　　406 F.2d 291 (2d Cir. 1968)................................................................. 25

*Guippone v. BH S & B Holdings, LLC*,
　　No. 09 Civ. 21029, 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ................... 37

*Hart v. BHH, LLC*,
　　No. 15 Civ. 4804, 2020 WL 5645984 (S.D.N.Y. Sept. 22, 2020) ........... 22, 27, 30, 35

*Hicks v. Morgan Stanley*,
　　No. 01 Civ. 10071, 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ................. 27

*In re Arakis Energy Corp. Sec. Litig.*,
　　No. 95 Civ. 3431, 2001 WL 1590512 (E.D.N.Y. Oct. 31, 2001) ................... 36

*In re Beacon Assocs. Litig.*,
　　No. 09 Civ. 777, 2013 WL 2450960 (S.D.N.Y. May 9, 2013)........................ 30

*In re Colgate-Palmolive Co. ERISA Litig.*,
　　36 F. Supp. 3d 344 (S.D.N.Y. 2014)................................................... 35

*In re Currency Conversion Fee Antitrust Litig.*,
　　263 F.R.D. 110 (S.D.N.Y. 2009) ......................................................... 34

*In re Hi-Crush Partners L.P. Sec. Litig.*,
　　No. 12 Civ. 8557, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014).................... 35

*In re Marsh ERISA Litig.*,
　　265 F.R.D. 128 (S.D.N.Y. 2010) ......................................................... 38

iv

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................................. 19

*In re Parking Heaters, Antitrust Litig.*,
    No. 15 Misc. 0940, 2019 WL 8137325 (E.D.N.Y. Aug. 15, 2019)................................. 22

*In re Payment Card Interchange Fee and Merchant Disc. Antitrust Litig.*,
    827 F.3d 223 (2d Cir. 2016).................................................................................... 24, 32

*In re Petrobras Sec.*,
    862 F.3d 250 (2d Cir. 2017)........................................................................................ 25

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06 Civ. 5173, 2008 WL 1956267 (S.D.N.Y. May 1, 2008)................................... 21

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)................................................................... 17, 33

*Jermyn v. Best Buy Stores, L.P.*,
    No. 08 Civ. 214, 2012 WL 2505644 (S.D.N.Y. June 27, 2012)................................... 22

*Johnson v. Nextel Commc'ns, Inc.*,
    780 F.3d 128 (2d Cir. 2015)........................................................................................ 23

*Manley v. Midan Rest. Inc.*,
    No. 14 Civ. 1693, 2017 WL 1155916 (S.D.N.Y. Mar. 27, 2017) ................................. 39

*McBean v. City of New York*,
    233 F.R.D. 377 (S.D.N.Y. 2006) ................................................................................. 38

*McLaughlin v. IDT Energy*,
    No. 14 Civ. 4107, 2018 WL 3642627 (E.D.N.Y. July 30, 2018) ........................... 22, 37

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012)............................................................. 16, 24, 35

*Parker v. City of New York*,
    No. 15 Civ. 6733, 2017 WL 6375736 (E.D.N.Y. Dec. 11, 2017) ................................. 16

*Pennsylvania Pub. School Emps. Ret. Sys. v. Morgan Stanley & Co., Inc.*,
    772 F.3d 111 (2d Cir. 2014)........................................................................................ 23

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1992)........................................................................................ 23

*Rosenfeld v. Lenich*,
    No. 17-cv-7299 (NGG) (PK) (E.D.N.Y.) ............................................................. 3, 5, 30

*Rosenfeld v. Lenich*,
  No. 18 Civ. 6720 (NGG) (PK), 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021)........... *passim*

*Seitz v. City of Elgin*,
  719 F.3d 654 (7th Cir. 2013) ................................................................................. 5, 17, 28

*Sewell v. Bovis Lend Lease, Inc.*,
  No. 09 Civ 6548, 2012 WL 1320124 (S.D.N.Y. Apr. 16, 2012).............................. 29, 38

*Sykes v. Harris*,
  No. 09 Civ. 8486, 2016 WL 3030156 (S.D.N.Y. May 24, 2016).................................... 37

*Velez v. Novartis Pharm. Corp.*,
  No. 04 Civ. 09194, 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ................................. 32

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)....................................................................................................... 23

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005)........................................................................................34, 35

*Wise v. Kelly*,
  620 F. Supp. 2d 435 (S.D.N.Y. 2008)............................................................................ 32

*Zink v. First Niagara Bank*,
  No. 13 Civ. 1076, 2016 WL 7473278 (W.D.N.Y. Dec. 29, 2016) ................................. 22

**Statutes**

18 U.S.C. § 2510...................................................................................................................... 1

18 U.S.C. § 2520................................................................................................................ 20, 30

28 U.S.C. § 1715.................................................................................................................... 10

Fed. R. Civ. P. 23.............................................................................................................. 22, 24

## INTRODUCTION

Following this Court's preliminary approval on February 4, 2021, Danielle Rosenfeld and

Vincent Garcia (the "Named Plaintiffs"), individually and on behalf of a class of approximately

331 individuals they represent (collectively, "Plaintiffs"), now move for final approval of their

settlement with  the City of New York, and several Kings County District Attorney ("KCDA")

and City employees (collectively, the "City Defendants").[1] The City Defendants have agreed to

pay up to $3,200,000 to settle Plaintiffs' claims that their phone calls, voice messages, and text

messages were illegally intercepted and recorded, in violation of the Wiretap Act, 18 U.S.C. §

2510, as part of an illegal wiretapping operation conducted by Defendant Tara Lenich, then-

Deputy Chief of Special Investigations at the KCDA targeting her coworker and fellow KCDA

prosecutor, Stephanie Rosenfeld, and a New York Police Department ("NYPD") detective,

Jarrett Lemieux.

The Court preliminarily approved the Settlement on February 3, 2021, finding the

Settlement to be sufficiently fair, reasonable, and adequate to warrant providing notice to the

class and scheduling a fairness hearing, which is set for September 23, 2021. Dkt. 97-1. The

Court also certified a class for settlement purposes. *Id.* Notice was provided to the class in

accordance with the Court's February 4th Order and, to date, 48% of the class has filed valid

claims and no class member has objected to or opted out of the Settlement. Plaintiffs now

respectfully request that the Court finally approve the Settlement.

This litigation and the resulting Settlement provide enormous benefit to the class. If

finally approved, the Settlement will provide between $6,000 and $15,000 of compensation to

---

[1]     The City Defendants are the City of New York, Kings County District Attorney Eric Gonzalez, Lu-Shawn Thompson as administrator of the Estate of Kenneth Thompson, Mark Feldman, William Schaefer, Brian Donohue, William Power, Michael Dowling, Joseph Piraino, and Robert Kenavan. Named Plaintiffs also sued Tara Lenich, but settled their claims against her separately. *See infra* at 7.

each class member who submits a valid claim. Class members will be compensated according to the number of times their phone numbers (and corresponding phone calls and text messages) were intercepted by the illegal wiretap. Based on the number of claims submitted and the amount of funds available, each class member who submitted a claim will receive the maximum award available to them under the Settlement. The attorneys' fees and costs Class Counsel request will not impact class members' awards.[2] Thus, class members with only one interception will receive $6,000, class members with between two and ten interceptions will receive $7,500, class members with between eleven and one hundred interceptions will receive $10,000, and class members with over 100 interceptions will receive $15,000. To put these numbers in perspective, had any one of these class members sued individually, the statutory damages would have been capped at $10,000—too small a sum to justify the expense and risk of individual litigation. Moreover, it is unlikely that the class would have been able to recover any damages absent this litigation. This lawsuit was filed just days before the statute of limitations on the Wiretap Act claims was set to run, and no individual class member had filed suit.

Named Plaintiffs respectfully request that this Court (i) finally approve the settlement as fair, reasonable, and adequate; (ii) finally certify the settlement class; (iii) grant Class Counsel's application for attorneys' fees and costs; and (iv) approve Named Plaintiffs' Service Award Payments.

---

[2]    Capitalized terms not defined in this memorandum of law have the meaning ascribed to them in the Settlement Agreement. *See* Emery Decl., Ex. 2.

# BACKGROUND

## A.     Procedural Background

On December 14, 2017, Stephanie Rosenfeld, through her counsel Emery Celli

Brinckerhoff & Abady ("Emery Celli"),[3] filed suit against Lenich, alleging that Lenich had

unlawfully intercepted and recorded Ms. Rosenfeld's phone calls and text messages. *See*

*Rosenfeld v. Lenich*, No. 17-cv-7299 (NGG) (PK) (E.D.N.Y.) ("*Rosenfeld I*"), DDkt. 1. The City

and certain KCDA supervisors were added to the suit three months later. *Id.*, Dkt. 11.[4]

In May 2018, during a conference before this Court in Stephanie Rosenfeld's case,

counsel for Ms. Rosenfeld raised the possibility that there was a class of victims whose

communications had been unlawfully intercepted and recorded, each of whom had viable claims

under the Wiretap Act. Counsel explained that those claims would soon be time-barred and that

discovery was necessary to reveal those victims' identities to preserve their claims. The Court,

concerned about preserving the claims of unidentified victims, directed the parties to engage in

"immediate discovery" to "unearth potential victims." *See* Declaration of Richard D. Emery,

dated August 23, 2021 ("Emery Decl.") ¶ 4. On August 16, 2018, Magistrate Judge Kuo ordered

the City to disclose the phone numbers with which Stephanie Rosenfeld had communicated

while her communications were being unlawfully intercepted. *See Rosenfeld I* Dkt. 70 ¶ 1. The

City disclosed this information in September 2018. Emery Decl. ¶ 6. From this initial disclosure,

Emery Celli determined Stephanie Rosenfeld's communications with approximately 150 unique

phone numbers had been unlawfully intercepted. *Id.* ¶ 7. Meanwhile, Wiggin and Dana LLP

("Wiggin"), which was representing Det. Lemieux, examined Det. Lemieux's phone records to

---

[3] The firm's name has since changed to Emery Celli Brinckerhoff Abady Ward & Maazel LLP.
[4] The relevant factual background underlying this litigation is described in detail in the Complaint, *see* Dkt. 1, and in Plaintiffs' Memorandum in Support of Preliminary Approval, *see* Dkt. 95-6.

discern how many potential victims had been intercepted during the fifteen-month period that Det. Lemieux's cell phone was tapped. *See* Declaration of James I. Glasser, dated August 23, 2021 ("Glasser Decl.") ¶ 3.

Recognizing that no other counsel had stepped forward to bring claims on behalf of these victims and that the time for filing suit was waning, Emery Celli and Wiggin agreed to jointly bring a putative class-action lawsuit on their behalf. Emery Decl. ¶ 11; Glasser Decl. ¶ 6. Named Plaintiffs Danielle Rosenfeld and Vincent Garcia retained both law firms on a contingency basis to represent them and pursue the putative class' claims. Emery Decl. ¶ 12.

On November 26, 2018, one day before the expiration of the applicable statute of limitations, Named Plaintiffs filed a class action complaint (the "Complaint") against Tara Lenich, the City of New York, and nine other defendants that Named Plaintiffs had reason to believe were liable for failing to prevent the unlawful interception of their communications and/or for illegally disclosing their communications. *See* Compl., Dkt. 1. The Complaint asserts three claims under the Wiretap Act: one against Lenich, one against the individual City Defendants, and one against the City itself. *Id.* ¶¶ 104-22. Through these counts, Named Plaintiffs sought to recover statutory liquidated damages of $10,000 per Class Member, and estimated that the class consisted of "at least 700 individuals." *Id.* ¶ 6; *see also id.* ¶ 32.[5]

On January 30, 2019, the Court held a pre-motion conference in the class case at which it granted leave for both the City Defendants and Defendant Lenich to file dispositive motions in response to the Complaint. *See* Minute Entry (Jan. 30, 2019). Both Lenich and the City

---

[5]    This estimate was based on a review of Det. Lemieux's and Stephanie Rosenfeld's phone bills. *See* Emery Decl. ¶ 17; Glasser Decl. ¶¶ 3-5. Class Counsel identified over 700 unique numbers in the phone bills for the period during which the wiretap was ongoing. Class Counsel assumed the wiretap was running 24 hours a day, 7 days a week, and that, consequently, all 700 numbers were intercepted. Later, through discovery, Class Counsel learned that not all of these numbers were actually intercepted by the wiretap because the wiretap was not continuously running. *See* Emery Decl. ¶¶ 20-23. The parties now agree that 331 unique numbers were intercepted during the wiretap. *Id.* ¶ 42.

Defendants sought a stay of discovery pending a decision on their motions. *See* Dkt. 41, 43. On February 14, 2019, Magistrate Judge Kuo denied the stay motions in part and ordered Defendants to provide whatever discovery had already been turned over to Stephanie Rosenfeld in *Rosenfeld I.* Minute Entry (Feb. 14, 2019). At a subsequent conference on March 27, 2020, Magistrate Judge Kuo lifted the stay of discovery and entered a scheduling order. Dkt. 48.

On March 4, 2019, the City Defendants served Named Plaintiffs with their motion to dismiss. *See* Dkt. 46, 52.[6] In their Motion, the City Defendants argued that Named Plaintiffs had failed to state plausible claims against the individual City Defendants and that the City itself could not, as a matter of law, be liable for violations of the Wiretap Act. *See* Dkt. 53 at 7-25. Days earlier, the Court had ruled in *Rosenfeld I* that the Wiretap Act claim against the individual City defendants in that case must be dismissed, but that the Wiretap Act claim against the City could proceed. However, the City had not argued in *Rosenfeld I* that municipalities cannot be liable under the Wiretap Act as a matter of law.

Here, the City did raise that argument and cited several decisions supporting the view that "a municipality cannot be subject to suit because the statute only refers to violations made by a 'person.'" *Id.* at 17 (citing *Seitz v. City of Elgin*, 719 F.3d 654, 656–60 (7th Cir. 2013); *Abbott v. Vill of Winthrop Harbor*, 205 F.3d 976, 980–81 (7th Cir. 2000); *Anderson v. City of Columbus*, 374 F. Supp. 2d 1240, 1245–46 (M.D. Ga. 2005)). They acknowledged however, that "[t]he Second Circuit has never addressed this issue." *Id.* The City Defendants' motion to dismiss was fully briefed and filed on April 15, 2019, and remained pending until March 13, 2020, when the Court denied the Motion without prejudice in light of the parties' anticipated settlement. *See* Minute Entry (Mar. 13, 2020).

---

[6]     At the same time, Defendant Lenich filed a Motion to Strike the Class Allegations. Dkt. 57. Named Plaintiffs opposed this motion at the same time they opposed the City Defendants' motion to dismiss.

While Defendants' motions were pending, the parties exchanged substantial written discovery. Between May 20, 2019, and July 22, 2019, the City Defendants produced 8,310 pages of documents, Lenich produced 196 pages of documents, and Named Plaintiffs produced 105 pages of documents. Emery Decl. ¶ 16.

On July 30, 2019, the parties held a settlement conference with Magistrate Judge Kuo. Prior to the Settlement conference, Named Plaintiffs demanded $7,000,000 on behalf of the class—equating to $10,000 for each of the approximately 700 individuals who Named Plaintiffs then believed made up the class. *Id*. ¶ 17. In response, the City made an offer of $150,000. *Id.* ¶ 18. At the settlement conference, after several rounds of joint and *ex parte* discussions with Magistrate Judge Kuo, the City Defendants' offer had risen to only $250,000. *Id.* ¶ 19. Named Plaintiffs' demand remained at $7,000,000—based on the assumption that the wiretap was running continuously and that it therefore intercepted communications from all 700 unique phone numbers—though Named Plaintiffs acknowledged that their demand would be lowered if it was determined that the class was actually smaller than Named Plaintiffs believed. *Id.*

Following the settlement conference, the parties continued to exchange discovery. In addition, they jointly set out to conclusively determine the number of Class Members. *Id.* To do this, they jointly interviewed an expert on the KCDA's wiretapping system, who confirmed that Lenich's wiretap likely did not run 24 hours per day, and that many of the phone numbers that appeared in Det. Lemieux's and Stephanie Rosenfeld's phone records were not in fact intercepted by the wiretap. *Id.* ¶¶ 20-21. In light of this new information, Named Plaintiffs adjusted their valuation of the class claims, recognizing that the size of the class was about half of what they had originally believed. *Id.* ¶ 23. They continued pressing, however, for electronic discovery, including emails, which the City Defendants were slow to produce. Ultimately,

Named Plaintiffs filed a motion to compel on November 14, 2019, Dkt. 74, which—after a hearing—led Magistrate Judge Kuo to order the City Defendants to produce electronic discovery on or before February 18, 2020. *See* Minute Entry (Dec. 13, 2019).

While Named Plaintiffs fought with the City Defendants over electronic discovery, they were also negotiating a settlement with Defendant Lenich. Lenich had long maintained that she was "judgment proof" and would not be able to satisfy any judgment against her. Emery Decl. ¶ 27. Accordingly, Named Plaintiffs recognized that she would likely be more valuable to the class as a witness than a defendant. *Id.* ¶ 28. Over the course of several weeks, Named Plaintiffs and Lenich negotiated a settlement under which Lenich would cooperate with Named Plaintiffs by providing truthful testimony about her conduct. *Id.* ¶ 29. She also agreed to provide a sworn declaration in which she explained how she used City facilities, City equipment, and City employees to carry out her wiretapping scheme. *See* Dkt. 78.

The City Defendants objected to the settlement between Lenich and Named Plaintiffs, seeking to vacate Named Plaintiffs' dismissal of their claims against Lenich and compel disclosure of the monetary portion of the Lenich settlement. *See* Dkt. 79, 80. At a pre-motion conference held January 31, 2020, the Court granted the City leave to brief whether notice should be provided to putative Class Members before Lenich was dismissed from the case. Minute Entry (Jan. 31, 2020). The Court directed the City Defendants to file a brief no later than March 3, 2020. *Id.* The City Defendants never filed that brief.

Not long after the settlement with Lenich, Named Plaintiffs and the City Defendants reengaged in earnest settlement discussions. Emery Decl. ¶ 30. The parties arrived at an agreement in principle on February 14, 2020. *Id.* ¶ 31; *see also* Dkt. 85. The parties then spent several months ironing out the details of the settlement, including the notice and administration

provisions of the settlement, a process that was slowed considerably by the COVID-19 pandemic. Emery Decl. ¶ 32.

### B. The Settlement Agreement

The Settlement Agreement that was ultimately reached requires the City Defendants to fund a Class Fund of $3,200,000, which will be used to satisfy the Class Members' claims and pay attorneys' fees and administrative costs. *See* Emery Decl., Ex. 2 ("Settlement Agmt.") ¶ 43.

The "Settlement Class" is defined as "All persons or entities, including the Class Representatives, whose wire or electronic communications with Stephanie Rosenfeld's personal cellular phone and/or with Jarrett Lemieux's personal cellular phone were intercepted using the ADACS system at the Kings County District Attorney's Office during the Class Period." *Id.* ¶ 36. The class definition goes on to explain that "[a]n entity—i.e. a non-human person—is part of the Settlement Class only if the human person who used the entity's phone number to communicate with Stephanie Rosenfeld's personal cell phone and/or Jarrett Lemieux's personal cell phone cannot be identified." *Id.*

The Settlement Agreement's notice plan was robust and tailored to the unique circumstances of the case. It provided that the parties would first cooperate (along with Jarrett Lemieux and Stephanie Rosenfeld) to identify names and addresses of Class Members based upon the phone numbers the City Defendants had produced. *Id.* ¶ 7. Once the Class Members were identified, the notice plan provided that each would receive, by direct mail, a Notice and Claim Form to fill out and return. *Id.* ¶ 8. It also provided that the Claims Administrator would directly call Class Members and send text messages to notify them of the Settlement and provide a link to a website where Class Members could view the Notice, obtain information about the Settlement, and submit an online Claim Form. *Id.* ¶¶ 38, 60.

8

Under the Settlement Agreement, each Class Member who submits a valid claim form will be entitled to a certain number of "Award Units," based upon how many of the Class Member's communications were intercepted. *Id*. ¶ 45. Class Members who had 1 phone call or text message intercepted receive 6 Award Units. Class Members who had between 2 and 10 calls or texts intercepted receive 7.5 Award Units. Class Members with between 11 and 100 interceptions receive 10 Award Units, and Class Members with more than 100 interceptions receive 15 Award Units. *Id.* Each Award Unit will have an equal monetary value, determined by dividing the Net Settlement Fund (calculated and defined as the total Settlement Fund minus Administrative Costs, attorney's fees and costs, and Service Awards) by the total number of Award Units (calculated based on the total number of interceptions of eligible claiming Class Members), except that the value of an Award Unit may not exceed $1,000. *Id.* ¶ 45(e). The payment that each Class Member receives will be calculated by multiplying the number of Award Units to which the Class Member is entitled by the monetary value of the Award Unit. *Id.* ¶ 45(f).

Even with the substantial number of claims submitted—nearly half of the Class Members—the Award Units will have their maximum value of $1,000. Emery Decl. ¶ 50; Declaration of Dana Boub, August 20, 2021 ("Boub Decl.") ¶ 24. Individuals with 1 interception will receive $6,000, individuals with between 2 and 10 interceptions will receive $7,500, individuals with between 11 and 100 interceptions will receive $10,000, and individuals with more than 100 interceptions will receive $15,000. Settlement Agmt. ¶ 45. The Agreement also provides that Named Plaintiffs, Danielle Rosenfeld and Vincent Garcia, will receive $15,000 each, as service award payments. *Id.* ¶ 42. This is the only sum Named Plaintiffs will receive

9

under the Settlement Agreement. They may not also collect based on the Award Units formula described above. *Id.*

The Settlement Agreement leaves the appropriate sum of attorneys' fees and costs to the Court's discretion based upon Named Plaintiffs' motion for attorneys' fees. *Id.* ¶ 40**.** The parties have not reached any side agreement or "clear sailing" agreement concerning fees. Emery Decl. ¶ 44. Finally, Administrative Costs will also be taken out of the Settlement Fund. Settlement Agmt. ¶ 41. The Administrator estimates that the Administrative Costs will not exceed $50,000. Boub Decl. ¶ 25.

All told, if the Settlement is approved, each Class Member will recover thousands of dollars, at or very near to (and in some cases even *above*) the statutory maximum amount that would have been available in an individual lawsuit.

## C.    Settlement Administration

On February 4, 2021, the Court preliminarily approved the Settlement, preliminarily certified the Class for settlement purposes, appointed Named Plaintiffs to represent the Class, appointed Emery Celli and Wiggin as Class Counsel, approved the appointment of RG/2 Claims Administration LLC ("RG/2") to serve as the Settlement Claims Administrator, and directed that notice be provided to Class Members in accordance with the Court's order. Dkt. 97-1 (the "Preliminary Approval Order").[7] Over the last six months, Class Counsel, counsel for City Defendants, and RG/2 have worked together to ensure that notice was provided to the Class in accordance with the Court's order. *See* Emery Decl.; Boub Decl.

---

[7]      Soon after Named Plaintiffs filed the motion for preliminary approval of the settlement, counsel for the City Defendants served notices advising of the proposed Settlement on state and federal authorities entitled to receive such notice under the Class Action Fairness Act, 28 U.S.C. § 1715. *See* Emery Decl. ¶ 34.

### 1.   Identification of and Notice to the Original Class Members

RG/2 initially identified 286 Class Members from the intercepted communications metadata provided by City Defendants' counsel on February 5, 2021 (the "Original Class Members"). Boub Decl. ¶ 4. The Original Class Members did not include all unique phone numbers that were identified in the metadata. For some phone numbers, the metadata listed the calls as "unanswered," and counsel all believed that meant the calls had not been intercepted, as defined in the Settlement Agreement. *Id.* ¶ 16; Emery Decl. ¶ 46; *see also* Settlement Agmt. ¶ 26 ("Interception" refers to a communication . . . that was intercepted and recorded by ADACS").

RG/2 performed extensive reverse lookup and skip tracing to identify names, mailing addresses, email addresses, and current phone numbers for the Original Class Members. Boub Decl. ¶ 5. Beginning on February 12, 2021, Class Counsel provided RG/2 with Class Member contact information obtained from the Named Plaintiffs, Stephanie Rosenfeld, and Jarett Lemieux and, beginning on February 26, Counsel for City Defendants provided RG/2 with names and contact information for Class Members assigned to phone numbers owned by the City.[8] Emery Decl. ¶ 39. From all this information, RG/2 was able to identify the mailing addresses for 230 Original Class Members and the email addresses for 92 Original Class Members. Boub Decl. ¶¶ 5-8.

On March 25, 2021, Notice and Claim Forms were sent by text message to all 286 Original Class Members, by First-Class mail to 230 Original Class Members, and by email to 92 Original Class Members. *Id.* ¶¶ 6-9; Ex. C. Each mailed Notice and Claim Form was tailored to the number of interceptions each Class Member was subjected to, projecting a range of monetary values that the Class Member could expect to receive if the Settlement is approved. *Id.* Ex. A.

---

[8] Under the Preliminary Approval Order, this information was due to RG2 by February 24, 2021, but the Court granted City Defendants' request for an extension of the deadline until February 26. Dkt. 101.

On March 25, 2021, a settlement website, www.wiretapclassaction.com, created and operated by RG/2, also went live. *Id.* ¶ 11. This website allowed Class Members to submit Claim Forms electronically, and also provided electronic copies of the Notice, all preliminary approval filings in the case, and a frequently asked questions page. *Id.* ¶¶ 11-12; Ex. E. Following the initial March 25 Notice, RG/2 conducted two rounds of phone calls to all 286 Original Class Members, *id.* ¶ 10; Ex. D, performed follow-up address tracing, and re-mailed notices that had been returned, *id.* ¶ 13. RG/2 sent a second text message notice on April 1, 2021, and a final reminder text message to all Original Class Members on June 16, 2021, one week prior to the Bar Date. *Id.* ¶ 9; Ex. C.

After making phone calls to all 286 Original Class Members, RG/2 identified 39 Original Class Members for whom names and mailing addresses had not been identified and whose phone numbers were non-working or non-responsive (the "Non-Responsive Numbers"). Emery Decl. ¶ 44; Boub Decl. ¶ 10. In May 2021, Counsel for Plaintiffs issued 14 subpoenas to telephone service providers seeking the names, mailing addresses, email addresses, and current phone numbers associated with these Non-Responsive Numbers. Emery Decl. ¶ 45. Responses to these subpoenas allowed Notice and Claim Forms to be sent to seven previously unidentified Original Class Members, bringing the total number of mailed notices to 237. *Id.*; Boub Decl. ¶ 7.

### 2.    Identification of and Notice to the Voicemail Class Members

In July 2021, Class Counsel identified an additional 45 Class Members who were not included among the Original Class Members. During the administration process, Class Counsel identified certain phone calls that were listed in the metadata as "unanswered" but that also showed a nonzero call duration. Emery Decl. ¶ 46. After further investigation and consultation with City employees versed in the ADACS system, the Parties determined that these unanswered phone calls of a nonzero duration represented voicemails and that a number of these voicemails

12

had been intercepted and recorded by ADACS. *Id.* The parties agreed that this constituted an "Interception" as defined in the Agreement. *Id.*; *see* Settlement Agmt. ¶ 26. By cross-referencing various records provided by Counsel for City Defendants and the current class list provided by RG/2, Class Counsel then identified 45 phone numbers whose voicemails had been intercepted and recorded by the ADACS system but who had not been previously identified as Class Members (the "Voicemail Class Members").[9] Emery Decl. ¶ 46.

The Parties agreed to immediately send notices to the Voicemail Class Members and on July 19, 2021, RG/2 sent the Notice and Claim Form by text message link to all 45 Voicemail Class Members. *Id.* ¶¶ 46-47; Boub Decl. ¶ 19. On July 23, 2021, RG/2 sent the Notice and Claim Form by email to 10 Voicemail Class Members and, over the course of that week, by First Class mail to 18 Voicemail Class Members. Boub Decl. ¶¶ 18, 20. Under the terms of the Settlement Agreement, the Voicemail Class Members have forty-five days from the date the Notice and Claim Form is sent, or until September 6, 2021, to submit a Claim Form or to object or opt out of the Settlement. Settlement Agmt. ¶ 70; Emery Decl. ¶ 48; Boub Decl. ¶ 18, Ex. F.

In total,  RG/2 caused Notice and Claim Form packages to be mailed by First-Class mail to 255 Class Members, to be sent by email to 102 Class Members, and to be sent by text message to 331 Class Members. Boub Decl. ¶ 19.

### 3.   Claims Filed

To date, 159 Class Members have submitted valid timely Claim Forms. Boub Decl. ¶ 22. Ten of these Claim Forms were submitted by the Voicemail Class Members. *Id.* ¶ 21. This represents 48% of all 331 Class Members, including the Voicemail Class Members who have yet to submit a claim and who have until September 6, 2021 to do so. Emery Decl. ¶ 49. Based on

---

[9]      The term "Voicemail Class Members" is used for simplicity but does not indicate the existence of a subclass. All Voicemail Class Members are members of the Class, as defined in the Settlement Agreement.

the claims filed to date and the number of Voicemail Class Member claims that remain outstanding, RG2 has calculated that each Award Unit will have a value of $1,000, the maximum possible value under the Settlement Agreement. Boub Decl. ¶ 24; Emery Decl. ¶ 50.

Calculated with the $1,000 Award Unit, the 159 Class Members who have filed valid claims to date and the Named Plaintiffs, who, if the Court approves, would receive $15,000 service awards each, would receive a total award of $1,268,500. Boub Decl. ¶ 22. In the event all Voicemail Class Members who have not already submitted a claim file a valid claim form by September 6, 2021, they would be eligible for a total combined award of $268,000, and the total maximum award for the entire class, including the service awards of $15,000 to each Named Plaintiff, would be $1,536,500. *Id.* ¶ 23.

If approved, this settlement will result in between $1,268,500 and $1,536,500 total payments to between 159 and 194 Class Members and the Named Plaintiffs. *Id.* ¶¶ 22-23.

## ARGUMENT

## I.   THE SETTLEMENT SHOULD BE FINALLY APPROVED BECAUSE IT IS FAIR, REASONABLE, AND ADEQUATE

The Court should grant final approval of the Settlement for the reasons it preliminarily approved the Settlement and based on the successful notice process and the overwhelmingly positive reaction of the Class.

A court may grant final approval of a proposed class action settlement

only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length;(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule

14

        23(e)(3); and (D) the proposal treats class members equitably
relative to each other.

F.R.C.P. 23(e)(2). As the Court predicted in finding that "it will likely be able to approve the

parties' proposed settlement agreement as fair, reasonable, and adequate," each of these factors

favors granting final approval of the Settlement. *Rosenfeld v. Lenich*, No. 18 Civ. 6720 (NGG)

(PK), 2021 WL 508339, at *4 (E.D.N.Y. Feb. 11, 2021) ("*Preliminary Approval Opinion").*

### A.      Named Plaintiffs and Class Counsel Have Adequately Represented the Class

        The Named Plaintiffs and Class Counsel have each adequately represented the Class. As

the Court found in granting preliminary approval, "there is no indication that the Named

Plaintiffs have interests that conflict with those of the putative class members," and Class

Counsel, "have demonstrated throughout this litigation that they are competent to represent the

class." *Preliminary Approval Opinion*, 2021 WL 508339, at *4, *5.

        Assessing the adequacy of Named Plaintiffs and Class Counsel "typically 'entails inquiry

as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class

and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *Cordes*

*& Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007).[10] Here, Named

Plaintiffs "have an interest in vigorously pursuing the claims of the class," and they have "no

interests antagonistic to the interests of other class members." *Denney v. Deutsche Bank AG*, 443

F.3d 253, 268 (2d Cir. 2006). Like all other Class Members, they are interested in maximizing

their permitted recovery. Named Plaintiffs suffered the same type of injury as all other Class

Members: Their private communications with Stephanie Rosenfeld and/or Jarrett Lemieux were

unlawfully intercepted and recorded. *See* Compl. ¶¶ 59, 66. Named Plaintiffs have vigorously

---

[10]      When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted and all
alterations are adopted.

pursued this case, and there is "no reason to doubt the compatibility of the class representatives'

and putative class members' interests." *Preliminary Approval Opinion*, 2021 WL 508339, at *4.

*See Morris v. Affinity Health Plan*, *Inc.*, 859 F. Supp. 2d 611, 616 (S.D.N.Y. 2012) (holding that

Rule 23(1)(4) was satisfied where there was no evidence that named plaintiffs' and class

members' interests were at odds).

      Class Counsel has capably represented the Class from the start of this litigation. Class

Counsel filed the Complaint just days before the statute of limitations expired, thus preserving

the Class Members' claims. S*ee* Emery Decl. ¶ 13. Class Counsel vigorously opposed

Defendants' motions to dismiss the case, aggressively pursued discovery in support of the Class

claims, and ultimately negotiated a settlement that will bring significant benefit to the Class.

      Since preliminary approval was granted, Class Counsel has continued to vigorously

pursue the interests of the class, including by issuing 14 subpoenas to telephone companies to

identify class member contact information and combing through metadata and conferring with

Counsel for City Defendants to identify the additional Voicemail Class Members. *See id*. ¶¶ 45-

46. Class Counsel also has a "wealth of relevant experience," including in "handling complex

class actions," such that Class Counsel is qualified, experienced, and able to represent the Class.

*Preliminary Approval Opinion*, 2021 WL 508339, at *5; *see also* Dkt. 95-6, Preliminary

Approval Br. at 16-17 (detailing Class Counsel's experience).

     **B.**    **The Settlement Was Negotiated at Arm's Length**

      The Settlement was achieved "through arms-length negotiations by counsel with

the experience and ability to effectively represent the class's interests." *Parker v. City of New

York*, No. 15 Civ. 6733, 2017 WL 6375736, at *5 (E.D.N.Y. Dec. 11, 2017). The parties engaged

in nine months of arms-length settlement negotiations and participated in a full-day settlement

conference before Magistrate Judge Kuo. *See* Emery Decl. ¶¶ 17-33. As the Court already found,

"[u]nder these circumstances," there is "no reason to doubt that the settlement negotiations were conducted at arm's length." *Preliminary Approval Opinion*, 2021 WL 508339, at \*5.

### C.   The Relief Provided Is Adequate

The Settlement provides significant monetary compensation to the Class and therefore provides more than adequate relief. The Class will receive between $1,268,500 and $1,536,500 under the Settlement, with each Class Member receiving between $6,000 and $15,000. *See* Emery Decl. ¶¶ 50-51.

#### 1.   The Relief Provided Is Adequate in Light of the Costs, Risks, and Delay of Trial and Appeal

The Settlement provides robust relief for all Class Members—not one of whom had filed, or was prepared to file, a lawsuit before the statute of limitations expired. This is particularly so given the risks, costs, and delay associated with further litigation. As the Court already found, "litigating this case to a final judgment would likely take years, require several rounds of motion practice and extensive discovery, and require both parties to expend considerable time and resources, and Plaintiffs would face a substantial likelihood that the effort and expense of litigating to a final judgment would not result in any recovery." *Preliminary Approval Opinion*, 2021 WL 508339, at \*5. The risks were particularly significant here given the City's argument that it could not be held liable under the Wiretap Act, *see* Dkt. 54 at 10-16, an argument that has found support in recent decisions in other jurisdictions, *see Seitz,* 719 F.3d at 656–60; *Doe v. Fed. Democratic Republic of Ethiopia*, 189 F. Supp. 3d 6, 12-15 (D.D.C. 2016).

#### 2.   The Settlement Provides for an Effective Method of Payment to the Class

The Settlement's mechanism for processing claims and allocating settlement funds is simple, effective, and adequate. *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (a plan for allocating settlement funds "need only have a reasonable, rational

17

basis, particularly if recommended by experienced and competent class counsel"). The Settlement provides that each Class Member's award will be determined on a *pro rata* basis according to the number of times his or her communications were intercepted. *See* Emery Decl. ¶ 37. The Court has already recognized that "[t]his allocation plan appears to be rational and fair, as it treats class members equitably while taking into account variations in the magnitude of their injuries." *Preliminary Approval Opinion*, 2021 WL 508339, at *6. Through tracing efforts and assistance from the Parties, the Class Administrator was able to identify addresses for and mail Notices to 255 Class Members. Boub Decl. ¶ 21. The Class Administrator was also able to send the Notice and Claim Form by text message to each intercepted phone number. *Id.* ¶¶ 9, 19. Class Members were able to easily verify their membership in the Class by providing the phone number that was intercepted. *Id.*, Ex. A. The Settlement procedure creates "negligible risk that claims will be made by individuals who do not properly belong to the class and a high likelihood that any unjustified claims would be detected and defeated." *Preliminary Approval Opinion*, 2021 WL 508339, at *6.

### 3. Any Award of Attorneys' Fees and Costs Will Not Diminish the Class Relief

An attorneys' fees award will have no impact on the Class's recovery. As permitted by the Settlement Agreement, Class Counsel is seeking an award of $1,066,666.66 in Attorneys' Fees, and costs in an amount of $31,655.20. *See infra* at 26-36. If granted, that will still leave $2,101,678.14 (less Administrative Costs, which RG/2 does not expect to exceed $50,000) available to class members who submit valid claims. This is more than enough to pay the total maximum value of all claims submitted, which, to date, is $1,268,500. Even if all Voicemail Class Members submit valid claims by September 6, 2021 (their deadline under the Settlement Agreement), the total maximum value of all claims, including the proposed service awards to

18

Named Plaintiffs, would rise only to $1,536,500. Emery Decl. ¶ 51; Boub Decl. ¶ 23. After deducting Administrative Costs, Class Counsel's requested attorneys' fees and costs, each Class Member who submits a valid claim form will receive the maximum amount contemplated under the Settlement Agreement, equating to between 60% and 150%—depending on the number of interceptions—of the $10,000 statutory damages cap.

### 4.    No Agreements Require Disclosure Under Rule 23(e)(3)

Under Rule 23(e)(3), "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." The Court must take account of any such agreement when deciding whether to approve the settlement. *Id.* R. 23(e)(1)(C)(iv). Here, the only agreement between the parties is the Settlement Agreement.

### D.    The Settlement Treats All Class Members Equitably

The Settlement Agreement treats Class Members equitably by allocating funds on a *pro rata* basis according to the number of times their communications were intercepted and thus the severity of the violation of their rights. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 135 (S.D.N.Y. 1997) (*pro rata* distribution provides "a straightforward and equitable nexus for allocation"). "In this way, the agreement appropriately and fairly accounts for the key point of differentiation among class members' claims." *Preliminary Approval Opinion*, 2021 WL 508339, at *7.

### E.    The *Grinnell* Factors Also Support Final Approval

While largely duplicative of the requirements of Rule 23(e)(2), the *Grinnell* factors, adopted by the Second Circuit to guide the evaluation of a class action settlement, also favor final approval. These factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement; (3) the stage of the
> proceedings and the amount of discovery completed; (4) the risks

> of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). In applying these factors, "not every factor must weigh in favor of the settlement, rather the court should consider the totality of these factors in light of the particular circumstances." *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 431 (S.D.N.Y. 2016).

As is evident from the analysis of the Rule 23 factors above, and supported by this Court's analysis in granting preliminary approval, the *Grinnell* factors weigh in favor of final approval. As the Court already found, "litigating this case to a final judgment would likely take years, require several rounds of motion practice and extensive discovery, and require both parties to expend considerable time and resources, and Plaintiffs would face a substantial likelihood that the effort and expense of litigating to a final judgment would not result in any recovery." *Preliminary Approval Opinion*, 2021 WL 508339, at \*5. In light of this assessment, the first, third, fourth, fifth and sixth *Grinnell* factors favor final approval. Those factors examine (1) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; and (6) the risks of maintaining the class action through the trial. As the Court found in granting preliminary approval, the seventh *Grinnell* factor—the ability of the defendants to withstand a greater judgment—was "largely irrelevant here . . . because the Wiretap Act limits each plaintiff's statutory damages to $10,000." *Id* at \*6 (citing 18 U.S.C. § 2520(c)(2)). In other

20

words, the maximum judgment to which the Defendants could be exposed—if every single victim of the wiretap recovered every single dollar permitted—would be $3,300,000: just $100,000 more than the negotiated settlement amount. *See also id.* at *7 ("In order to recover more than the settlement amount through continued litigation, at least 320 separate plaintiffs— more than 90% of the total class, and perhaps close to or more than 100% of the total class— would need to successfully recover the maximum statutory damages.").

The Court also found that, given the statutory damages cap, the relatively high recovery provided for under the Settlement, and the complications and risks of litigation, under the eighth and ninth *Grinnell* factors, it "is satisfied that it will ultimately find the settlement amount to be within the range of reasonableness." *Id.* at *8.

With respect to the second *Grinnell* factor, the notice and claim process demonstrates that the Class' reaction to the settlement overwhelmingly favors final approval. Notice has been robust and Class Member reaction has been uniformly positive. A total of 255 Class Members were sent detailed and court-approved Notice and Claim Forms by First-Class mail. *See* Boub Decl. ¶ 21. All 331 Class Members were sent text messages informing them of this Settlement and providing a link to the full Notice and Claim form. *Id.* Multiple phone calls were also placed to inform Class Members of the settlement. *Id.* ¶ 10. Five months after this individualized, comprehensive, and Court-approved notice began, not a single Class Member has objected to or excluded themselves from the proposed settlement. *Id.* ¶¶ 14-15. The lack of class member objections "may itself be taken as evidencing the fairness of a settlement." *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06 Civ. 5173, 2008 WL 1956267, at *6 (S.D.N.Y. May 1, 2008); *Hart v. BHH, LLC*, No. 15 Civ. 4804, 2020 WL 5645984, at *3

(S.D.N.Y. Sept. 22, 2020) ("[T]he absence of objections by the class is extraordinarily positive and weighs in favor of settlement.").

The high claim rate among Class Members can also be "taken as a sign of class approval under the second *Grinnell* factor." *McLaughlin v. IDT Energy*, No. 14 Civ. 4107, 2018 WL 3642627, at *11 (E.D.N.Y. July 30, 2018). To date, 159 Class Members have submitted timely Claim Forms. Boub Decl. ¶ 22. This represents 48% of all Class Members, including the 36 outstanding Voicemail Class Members who have until September 6, 2021 to submit their claims. Emery Decl. ¶ 48. This represents an extremely high response rate in a class-action settlement. *See Zink v. First Niagara Bank*, No. 13 Civ. 1076, 2016 WL 7473278, at *2 (W.D.N.Y. Dec. 29, 2016) (finding 43% response rate to be "an extraordinary claims rate that demonstrates that the Class views the settlement favorably"); *In re Parking Heaters, Antitrust Litig*., No. 15 Misc. 0940, 2019 WL 8137325, at *4 (E.D.N.Y. Aug. 15, 2019) (finding response rate of 13.1 percent to be "higher than the typical response rate of one to ten percent"); *see also Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 214, 2012 WL 2505644, at *6 (S.D.N.Y. June 27, 2012) (observing that "'claims made' settlements regularly yield response rates of 10 percent or less"); *Chambery v. Tuxedo Junction Inc.*, No. 12 Civ. 06539, 2014 WL 3725157, at *6 (W.D.N.Y. July 25, 2014) (finding 37% response rate to be an "unusually high participation rate for a 'claims made' settlement").

## II.     THE RULE 23 CLASS SHOULD BE FINALLY CERTIFIED

The Court's preliminary approval order found that, for purposes of settlement, the requirements of Fed. R. Civ. P. 23 were met and conditionally certified the Class for settlement purposes. *See* Dkt. 97-1 ¶ 4. For the same reasons that justified conditional certification, the Court should now finally grant certification of the Settlement Class, which satisfies the

requirements of Rules 23(a) and 23(b)(3). *See Preliminary Approval Opinion*, 2021 WL 508339, at *8-11; Dkt. 95-6 at 27-33.

> ### A.    The Settlement Class Meets the Requirements of Rule 23(a)

> #### 1.    The Class Is so Numerous that Joinder Is Impracticable

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Pennsylvania Pub. School Emps. Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 120 (2d Cir. 2014). Plaintiffs easily satisfy this requirement because there are 331 Class Members. Emery Decl. ¶ 47.

> #### 2.    The Class Satisfies Commonality and Typicality

Commonality under Rule 23(a) requires that the Proposed Class's "claims must depend upon a common contention of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 338 (2011). The commonality requirement is satisfied if plaintiffs "demonstrate that the class members have suffered the same injury." *Johnson v. Nextel Commc'ns, Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (internal quotation marks, alteration, and citation omitted). Similarly, "Rule 23(a)(3)'s typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1992).

As the Court previously found, the Class satisfies both the commonality and typicality requirements of Rule 23(a). *See Preliminary Approval Opinion*, 2021 WL 508339, at *9 ("Here, all putative class members possess identical claims against the same defendants, arising out of the same pattern of conduct, and pursuant to the same statute."); *see also* Dkt. 1 (Compl.).

### 3.   The Class is Adequately and Fairly Represented

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied because, as discussed *supra*, and as previously found by this Court, no evidence exists to suggest Named Plaintiffs are in any way antagonistic to or at odds with the Class's interests. *See Preliminary Approval Opinion*, 2021 WL 508339, at *5; *see also Morris,* 859 F. Supp. 2d at 616 (holding that Rule 23(1)(4) was satisfied where there was no evidence that named plaintiffs' and class members' interests were at odds).

Class Counsel also satisfies Rule 23(a)(4)'s requirement, which "serves to uncover . . . competency and conflicts of class counsel." *In re Payment Card Interchange Fee and Merchant Disc. Antitrust Litig.,* 827 F.3d 223, 231 (2d Cir. 2016). Emery Celli regularly handles class-actions and complex litigation in federal courts and has served as class counsel in at least a dozen certified class actions. Dkt. 95-1 (Preliminary Approval Emery Decl.) ¶¶ 50-52*.* Wiggin has broad and deep class-action experience on the defense side, which the firm brought to bear in this action. *See* Glasser Decl. ¶ 11. As the Court correctly determined in preliminarily approving the Settlement, Emery Celli and Wiggin have and will "fairly and adequately represent the interests of the class." *See Preliminary Approval Opinion*, 2021 WL 508339, at *12; *see also infra* at 30-32.

### B.   The Settlement Class Meets the Requirements of Rule 23(b)(3)

The Class also satisfies Rule 23(b)(3)'s requirement that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The "predominance" requirement is satisfied if: "(1) resolution of any material legal or factual questions can be achieved through generalized proof, and (2) these

common issues are more substantial than the issues subject only to individualized proof." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017) .

### 1.    Common Questions of Law and Fact Predominate

To establish predominance, a plaintiff must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107–108 (2d Cir. 2007). "Here, the claims of all potential class members involve identical legal and factual questions, including arguments against liability raised by the defendants in their motion to dismiss—such as the issue of whether municipal liability is cognizable under the Wiretap Act, and the issue of whether the individual defendants are entitled to qualified immunity—that are relevant to the claims of all class members." *Preliminary Approval Opinion*, 2021 WL 508339, at \*10. There are not even individualized damage issues, since every Class Member is seeking only statutory damages.

### 2.    A Class Action is the Superior Method for Resolving This Case

The second part of the Rule 23(b)(3) analysis compares whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy." *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968). The superiority requirement is met "when the main objectives of Rule 23 are served," including "the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitive litigation and possibly inconsistent adjudications." *D'Alauro v. GC Services, Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996) (citing *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). A class action is superior to any other method for the fair and efficient adjudication of this dispute. As the Court has already found, "the costs of bringing individual actions would be burdensome for potential plaintiffs who belong to the putative class: with statutory damages

25

capped at $10,000, individual class members would be unlikely to deem the effort and expense of litigation worthwhile." *Preliminary Approval Opinion*, 2021 WL 508339, at *10. To date, no Class Members have requested exclusion from the Settlement, further reinforcing the superiority of the class action mechanism. *See* Boub Decl. ¶ 14.

## III.   THE COURT SHOULD AWARD THE REQUESTED ATTORNEYS' FEES AND COSTS

Class Counsel seeks a fee award in the amount of $1,066,666.66, as well as costs in an amount of $31,655.20, to be paid from the Class Fund. This award of attorneys' fees and costs is permitted under the terms of the Settlement Agreement and the requested attorneys' fees are only 9% more than Class Counsel's current lodestar, which necessarily does not include the certain prospective expenditure of attorney time and resources. *See* Settlement Agmt. ¶ 14 (providing that the Class Fund "shall be used to pay . . . all attorney's fees and costs"); *Id.* ¶ 40 (providing that Class Counsel may make an application seeking Court approval for attorneys' fees of up to $1,066,666.66); Emery Decl. ¶ 55; Glasser Decl. ¶ 12. Moreover, given the terms of the Settlement Agreement and the size of the Class Fund, an award in the full requested amount would not diminish the recovery for each Class Member. Instead, if a lower amount is awarded, the difference would be returned to the City. *See* Settlement Agmt. ¶ 49. Under all the circumstances of the case, an award of one third of the Class Fund is reasonable.

The fees awarded in a class-action settlement "may not exceed what is reasonable under the circumstances." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000). Determining "[w]hat constitutes a reasonable fee is properly committed to the sound discretion of the district court." *Id.* The Court must consider the six *Goldberger* factors in assessing reasonableness: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in

26

relation to the settlement; and (6) public policy considerations. *Id.* at 50. "The trend in the Second Circuit is to assess a fee application using the 'percentage of the fund' approach, which assigns a proportion of the common settlement fund toward payment of attorneys' fees." *Hart*, 2020 WL 5645984, at *5. The percentage method is favored because it "reduces the incentive for counsel to drag the case out to increase the number of hours billed; also fewer judicial resources will be spent in evaluating the fairness of the fee petition." *Hicks v. Morgan Stanley*, No. 01 Civ. 10071, 2005 WL 2757792, at *8 (S.D.N.Y. Oct. 24, 2005). Nonetheless, even under the percentage-of-the-fund method, district courts are encouraged to crosscheck the percentage fee against the lodestar to ensure reasonableness. *Goldberger*, 209 F.3d at 50.

Here, the requested fee is reasonable. "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness." *Preliminary Approval Opinion*, 2021 WL 508339, at *6 (citing cases). The requested amount of fees and costs is reasonable as compared to similar settlements, in light of the results achieved for Class Members, and when crosschecked with the lodestar. The fees requested are particularly reasonable given that Class Counsel has vigorously litigated this case for three years and the risk of no recovery was high.

### A.    The Goldberger Factors Support Class Counsel's Fee Application

Examination of the six *Goldberger* factors demonstrates that Class Counsel's requested fee of $1,066,666.66 is reasonable.

#### 1.    Class Counsel's Time and Labor

Class Counsel has been investigating and litigating this case for over three years. *See* Emery Decl. ¶¶ 4-13. Collectively, Class Counsel has spent more than 1,682 hours litigating this case. *Id.* ¶ 55; Glasser Decl. ¶ 12. This time includes investigating and drafting the complaint, opposing the City Defendant's motion to dismiss, opposing Defendant Lenich's motion to strike

the class allegations, responding to discovery requests, reviewing over 8,500 pages of documents produced by Defendants in discovery, preparing for and participating in a settlement conference before Magistrate Judge Kuo, consulting experts on the ADACS metadata, moving to compel production of the City Defendants' electronically stored discovery, negotiating a settlement agreement with Lenich, negotiating the Settlement Agreement with the City Defendants, preparing Plaintiffs' motion for preliminary approval of the Settlement, overseeing administration of the Notice and Claim process, issuing subpoenas to identify contact information for Class Members, and preparing this motion. *See* Emery Decl. ¶¶ 9-33, 39, 46-47. Class Counsel will also conduct future work on behalf of the Class, in addition to the hours already expended, including preparing for the fairness hearing and, if final approval is granted, overseeing the distribution of settlement funds to the Class.

## 2. Magnitude and Complexities of the Litigation

As detailed in the previous section and in the accompanying Class Counsel declaration, this litigation has been extensive and complex. *See generally*, Emery Decl.; *see also Preliminary Approval Opinion*, 2021 WL 508339, at *5 (recognizing the complexity and challenges of the case in assessing the costs, risks, and delay of trial and appeal under Rule 23(e)(2)(c)). This case involves challenging and novel legal issues, including whether municipalities may be held liable under the Wiretap Act, and whether the Individual Defendants are entitled to qualified immunity. *See* Dkt. 52. Federal courts are split on whether municipalities can be held liable under the Wiretap Act, *see, e.g. Seitz,* 719 F.3d at 656–60; *Adams v. City of Battle Creek*, 250 F.3d 980, 985 (6th Cir. 2001), and the question has yet to be addressed in this Circuit. The complexity of this issue—which the City briefed most extensively in its reply in further support of its motion to dismiss—necessitated extensive research into case law construing the Wiretap Act, as well as its legislative history across decades of amendments. Class Counsel were compelled to draft a

surreply memorandum addressing these arguments and prepare for the possibility of an immediate appeal even if this Court denied the City's motion. *See* Emery Decl. ¶ 14; Dkt. 62.

The case has also presented significant practical challenges. For example, in order to determine the existence and scope of the Class, Class Counsel had to compel disclosure of and then parse and analyze complicated ADACS metadata. *See* Emery Decl. ¶¶ 4-7, 20-23, 39. At the notice stage, Class Counsel also had to identify Class Members from phone numbers, including by working with RG/2 to conduct reverse lookups on the intercepted phone numbers, working with City Defendants' counsel to search City databases, conducting outreach to Stephanie Rosenfeld and Jarrett Lemieux, and issuing subpoenas to phone companies. *Id.* ¶¶ 44-46.

### 3. Risk of Litigation

While all factors are important, the Second Circuit has made clear that the risk of success is "perhaps the foremost factor to be considered in determining" the reasonableness of an attorneys' fees request. *Goldberger*, 209 F.3d at 54. "A contingency fee arrangement presents a financial risk to class counsel who are asked to front the costs of the litigation with a chance of not receiving any award in return." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *12 (S.D.N.Y. Apr. 16, 2012). In considering this factor, the risk should be measured at the outset of the case and not at the time of settlement. *Goldberger*, 209 F.3d at 55.

The City was the only realistic source of recovery for the Class, increasing the risk of no recovery. In granting preliminary approval of the settlement, the Court recognized that this litigation involved significant risk of little to no recovery: "[L]itigating this case to a final judgment would likely take years, require several rounds of motion practice and extensive discovery, and require both parties to expend considerable time and resources, and Plaintiffs would face a substantial likelihood that the effort and expense of litigating to a final judgment would not result in any recovery." *Preliminary Approval Opinion*, 2021 WL 508339, at *5. Until

the parties agreed to settle this case, there was substantial risk that Named Plaintiffs and the putative class might recover nothing. Lenich made it clear she could not satisfy a judgment, and the Court had already dismissed a similar Wiretap Act claim against the individual City Defendants in *Rosenfeld I*. The City, meanwhile, claimed it could not be held liable under the Wiretap Act, and the Court had yet to rule on the issue, a novel issue of law in the Second Circuit. *See* Dkt. 52. Because Class Counsel litigated this case on a contingency basis, a dispositive adverse ruling on this or any other issue would have resulted in no fee recovery at all. *See* Emery Decl. ¶ 12.

The gauntlet of uncertainty that Plaintiffs faced throughout the litigation militates in favor of approval of the requested fee award. *See In re Beacon Assocs. Litig.*, No. 09 Civ. 777, 2013 WL 2450960, at *13 (S.D.N.Y. May 9, 2013) ("[A]ll of these matters were taken on contingency, so in view of the novelty of the issues there was some possibility that counsel would recover nothing at all").

### 4.    Quality of Representation

"The results achieved through Class Counsel's efforts are a critical element in determining the appropriate fee to be awarded, and the settlement here will undoubtedly have widespread benefits to the class." *Hart*, 2020 WL 5645984, at *11. Despite the high risk of no recovery, Class Counsel obtained a significant settlement for the Class. The Settlement provides Class Members with between $6,000 and $15,000, which represents most, if not all, of the relief they would be entitled to under the statute, and in some cases even more. *See* 18 U.S.C. § 2520(c)(2).[11] *See also Preliminary Approval Opinion*, 2021 WL 508339 at *8 (finding that

---

[11]    Plaintiffs may alternatively recover actual compensatory damages. *Id.* That is what Stephanie Rosenfeld and Jarrett Lemieux sought in their separate lawsuits. However, there is no reason to believe any Class Member could prove actual damages in excess of $10,000, especially since not one filed his or her own lawsuit before the statute of limitations expired. Accordingly, the Complaint is limited to statutory damages.

with "statutory damages capped at $10,000 per plaintiff, the proposed settlement amount of $3.2 million at least approaches and perhaps even exceeds the best possible recovery"). Moreover, in large part due to Class Counsel's efforts to identify and conduct outreach to Class Members through the Administrator, around one-half of all Class Members have submitted valid claims and will recover under the Settlement if it is approved. Emery Decl. ¶ 49. This is particularly striking, given that, had counsel not stepped forward to file the class action complaint on the last day before the statute of limitations expired, the Class Members would have had no chance at a recovery. *Id.* ¶ 13. Instead, they stand to recover thousands of dollars (to which most, if not all, had no idea they were entitled).

The quality of the lawyers involved in this case also heavily supports this factor. As the Court recognized, "Plaintiffs' attorneys are well regarded and highly capable, and they have demonstrated throughout this litigation that they are competent to represent the class." *Preliminary Approval Opinion*, 2021 WL 508339, at *5. Class Counsel consists of experienced attorneys with a strong reputation in the legal community. Both law firms have extensive class action experience. Emery Celli regularly handles class-actions and complex litigation in federal courts and has served as class counsel in at least a dozen certified class actions. Dkt. 95-1 (Preliminary Approval Emery Decl.)*.* ¶ 51. In at least two class actions where Emery Celli served as lead counsel, courts described the firm as "preeminent." *Brown v. Kelly*, 244 F.R.D. 222, 233 (S.D.N.Y. 2007), *aff'd in part, vacated in part on other grounds*, 609 F.3d 467 (2d Cir. 2010); *Betances v. Fischer*, 304 F.R.D. 416, 428 (S.D.N.Y. 2015). Courts have taken "judicial notice of [Emery Celli]'s high reputation, finding it to be one of the most competent, successful, and

reputable civil rights firms practicing in this Court." *Wise v. Kelly*, 620 F. Supp. 2d 435, 445 (S.D.N.Y. 2008) (citation omitted).

Wiggin has broad and deep class-action experience on the defense side, which the firm brought to bear in this action. *See* Glasser Decl. ¶¶ 8-9. With respect to the subject matter of the case, James Glasser (the lead Wiggin attorney on this case), is intimately familiar with the Wiretap Act, having held senior positions in the U.S. Attorney's Office for the District of Connecticut. *Id.* ¶ 9. In that capacity, Mr. Glasser oversaw over fifty wiretap applications and became intimately familiar with the requirements of Title III. *Id.* In addition, once in private practice, Mr. Glasser successfully represented a former FBI agent who had been sued for exceeding the scope of an authorized wiretap. *Id. See Drimal v. Tai*, 786 F.3d 219 (2d Cir. 2015).

### 5.    Fee in Relation to Settlement

Class Counsel's requested fee award represents one-third of the maximum value of the Settlement Fund. Such a fee award is reasonable when compared to similar class-action settlements. As the Court recognized in preliminarily approving the Settlement, "'[i]t is very common to see 33% contingency fees in cases with funds of less than $10 million.'" *Preliminary Approval Opinion*, 2021 WL 508339, at *6 (citing *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2013)) (collecting cases); *see also Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) ("District courts in the Second Circuit routinely award attorneys' fees that are 30 percent or greater.") (collecting authorities).

Here, the requested fee award is reasonable. "This is not a case where the percentage of the fund claimed by plaintiffs is small and less than 10% of the fund amount, while the fees recovered are grossly disproportional and exceed the plaintiffs' recovery." *Brack v. MTA New York City Transit*, No. 18 Civ. 846, 2019 WL 8806149, at *4 (E.D.N.Y. Apr. 26, 2019). To the

contrary, between 40% ($1,268,500) and 48% ($1,536,500) of the total fund will be distributed to Class Members. *See* Boub Decl. ¶¶ 22-23.

Moreover, the Settlement is designed such that that "[a]n award of the full amount of the requested fees and costs will not deprive any plaintiffs of their potential settlement amounts, and therefore also counsels in favor of approval." *Brack,* 2019 WL 8806149, at *4. An award to Class Counsel of $1,066,666.66 in fees and $31,655.20 in costs will still leave $2,101,678.14 (less administrative costs, which RG/2 does not expect to exceed $50,000) available to Class Members who submit valid claims. To date, 159 Class Members have submitted valid claims. The maximum value of those claims plus the proposed service awards to Named Plaintiffs is $1,268,500. *See* Boub Decl. ¶ 22. Even assuming that 100% of the 35 outstanding Voicemail Class Members, whose claims are due September 6, submit valid claims, there will still be ample funds to distribute the maximum awards to each of the Voicemail Class Members. *See* Boub Decl. ¶ 24. Because any unclaimed or unawarded portion of the Settlement Fund will revert to the City, rather than be distributed among Class Members, a full award of the requested fees will not negatively impact the Class. *See* Settlement Agmt. ¶ 49.

### 6.  Public Policy Considerations

Public policy considerations support Class Counsel's fee request.  As the Second Circuit in *Goldberger* recognized, "[t]here is [] commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest." *Goldberger*, 209 F.3d at 51. "In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d at 359.

Here, Class Counsel took on a significant risk by representing, on a contingency basis, individuals whose communications were illegally intercepted in a novel class action proceeding

under the Wiretap Act against a municipality and city employees. The victims of this illegal wiretap would never have recovered had it not been for the steps Class Counsel took to identify them and vindicate their rights. This lawsuit has also served the public interest in exposing weaknesses in the wiretap protocols of the Kings County District Attorney's Office, which will hopefully be incentivized to improve privacy protections to the benefit of all citizens.

The requested fee amount does not result in a "windfall to class counsel to the detriment of the plaintiff class[,]" which would not serve public policy. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 130 (S.D.N.Y. 2009). Instead, it provides a modest financial incentive for other attorneys to undertake these cases despite the fact that compensation is not guaranteed at the outset.

**B.      The Lodestar Crosscheck Supports the Requested Award**

Comparing the requested amount with the lodestar in this case supports the reasonableness of Class Counsel's fee request. Class Counsel's lodestar is roughly equivalent to the requested fee award. *See* Emery Decl. ¶ 55; Glasser Decl. ¶ 12. The lodestar is calculated by multiplying the number of hours expended on the litigation by counsel's hourly rate. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005).  The Second Circuit has made clear that in cases where the lodestar is "used as a mere cross-check," the district court does not need to "exhaustively scrutinize[]" the hours documented by counsel or engage in "the cumbersome, enervating, and often surrealistic process of lodestar computation." *Goldberger*, 209 F.3d at 49–50 (internal quotation marks omitted). Instead, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with this case . . . ." *Id*. at 50. In performing the crosscheck, which is solely a "rough indicator of the propriety of a fee request[,]" a district court "must be cautious of placing too much weight" on the numbers underlying the

lodestar calculation so as not to reintroduce the problems associated with this method. *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011).

Here, the current total combined lodestar for Class Counsel is $976,071.50. *See* Emery Decl. ¶ 55; Glasser Decl. ¶ 12. The hourly attorney rates used to calculate the lodestar (between $400 and $900 for Emery Celli and between $225 and $750 for Wiggin) are current rates the firms charge clients who pay hourly for work in the Eastern District of New York. *Id.* Given that in the Second Circuit "multipliers of between 3 and 4.5 have become common," *Wal-Mart Stores,* 396 F.3d at 123 (2d Cir. 2005), the fact that the award sought here represents only a modest multiplier of 1.09 supports the conclusion that the request is reasonable. *See In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (discussing empirical evidence that the median multiplier in class action settlements is around two and describing a multiplier of five as "large, but not unreasonable"); *Hart*, 2020 WL 5645984, at *11 (awarding Class Counsel attorneys' fees at a  multiplier of 1.5 the lodestar, equivalent to "51.75% of the total benefit inured to the class").

### C.    Class Counsel's Expenses Should Be Reimbursed

In class-action settlements, "[c]ourts typically allow counsel to recover their reasonable out-of-pocket expenses." *Morris,* 859 F. Supp. 2d at  624. Courts recognize that in cases where expenses are incurred without guarantee of recovery, there is a "strong incentive to keep them at a reasonable level," as counsel did here. *See In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12 Civ. 8557, 2014 WL 7323417, at *19 (S.D.N.Y. Dec. 19, 2014). The requested reimbursement is for $31,655.20 in necessary expenses that were actually incurred by Class Counsel. Emery Decl. ¶ 54; Glasser Decl. ¶ 13. These expenses include costs for filing fees, service of process, court reporter services, discovery management, and legal research. *Id.* These expenses are reasonable, particularly in light of the length and complexity of this litigation, and should be reimbursed

35

from the Settlement Fund, as permitted by the Settlement Agreement. *See In re Arakis Energy Corp. Sec. Litig.*, No. 95 Civ. 3431, 2001 WL 1590512, at *17 (E.D.N.Y. Oct. 31, 2001) (granting reimbursement of over $400,000 in expenses and finding "given the scope and complexity of this litigation, the expenses requested by plaintiffs' counsel are reasonable"); *Chambery v. Tuxedo Junction Inc.*, No. 12 Civ. 06539, 2014 WL 3725157, at *10 (W.D.N.Y. July 25, 2014) (approving award of litigation costs and finding that "the costs do not appear unreasonable based on the Court's understanding that the costs were actually incurred").

## IV.      THE NAMED PLAINTIFFS SHOULD BE AWARDED SERVICE AWARDS

In accordance with the Settlement Agreement, Plaintiffs respectfully request that the Court approve service awards for the Named Plaintiffs Danielle Rosenfeld and Vincent Garcia in the amount of $15,000, in recognition of the services they rendered on behalf of the class. *See* Settlement Agmt. ¶ 42. Those services included: participating for almost three years in active litigation, assisting with discovery, communicating regularly with Class Counsel, providing documents and information to Class Counsel, and, in the interest of the case, publicizing their personal experience with Defendants' illegal wiretaps. *See* Emery Decl. ¶ 57. Under the terms of the Settlement Agreement, the Named Plaintiffs are prohibited from claiming any amounts otherwise due to them under the terms of the Settlement, such that the requested service awards will be the only amount payable to Named Plaintiffs. Settlement Agmt. ¶ 42. Without the Named Plaintiffs' willingness to serve as class representatives, Plaintiffs likely would not have been able to file this lawsuit within the statute of limitations period and secure the proposed settlement, which provides significant benefits to the Class.

Service awards in class actions compensate "plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a

litigant, and any other burdens sustained by the plaintiffs." *McLaughlin,* 2018 WL 3642627, at

*6.

> The guiding standard in determining an incentive award is broadly
> stated as being the existence of special circumstances including the
> personal risk (if any) incurred by the plaintiff-applicant in
> becoming and continuing as a litigant, the time and effort
> expended by that plaintiff in assisting in the prosecution of the
> litigation or in bringing to bear added value (e.g., factual
> expertise), any other burdens sustained by that plaintiff in lending
> himself or herself to the prosecution of the claim, and, of course,
> the ultimate recovery.

*Berkson v. Gogo LLC*, 147 F. Supp. 3d. 123, 133 (E.D.N.Y. 2015) .

### A.    Significant Risks

The requested service awards are reasonable in light of the risks that the Named Plaintiffs

assumed in serving the interests of the class. The Named Plaintiffs bore reputational risks far

above those of unnamed class members by virtue of the public nature of their complaint and their

willingness to participate in discovery. *See* Emery Decl. ¶ 58; *see also Guippone v. BH S & B*

*Holdings, LLC*, No. 09 Civ. 21029, 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Today,

the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become

known to prospective employers when evaluating the person."); *Sykes v. Harris*, No. 09 Civ.

8486, 2016 WL 3030156, at *18 (S.D.N.Y. May 24, 2016) ("Incentive awards are appropriate

when considering the sacrifice of Plaintiffs' anonymity").

### B.    Significant Time and Effort

The requested service awards are also reasonable in light of the time and effort expended

by the Named Plaintiffs. Named Plaintiffs contributed significant time and effort to the

investigation and prosecution of the case, including by providing Class Counsel with factual

information regarding their experiences with Defendants' unlawful interception of their

communications, participating in discovery and settlement negotiations (including a full-day

settlement conference), and facilitating the identification of other Class Members. *See* Emery Decl. ¶¶ 57-58, *Sewell v. Bovis Lend Lease, Inc*., No. 09 Civ. 6548, 2012 WL 1320124, at *15 (S.D.N.Y. Apr. 16, 2012) (approving service awards of $15,000 and $10,000 to named plaintiffs where "[c]lass counsel asserts that the class representatives provided detailed factual information to class counsel for the prosecution of their claims and made themselves available regularly for any necessary communications with counsel"); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150-51 (S.D.N.Y. 2010) (awarding "modest case contribution awards of $15,000 each" to plaintiffs who came forward to initiate action, remained in frequent contact with counsel, participated in discovery, and reviewed court filings).

### C.     Ultimate Recovery

The service awards requested here of $15,000 for each Named Plaintiff are reasonable and well within the range of those regularly approved by courts in this Circuit. *See McBean v. City of New York*, 233 F.R.D. 377, 391 (S.D.N.Y. 2006) (approving service awards ranging from $25,000 to $35,000 and finding that "when compared to incentive awards given generally to named plaintiffs across a variety of class actions," these awards "fall solidly in the middle of the range"); *Charles v. Opinion Access Corp.*, No. 16 Civ. 6868, 2020 WL 9812930, at *6 (E.D.N.Y. Mar. 13, 2020) (finding request for incentive awards of $15,000.00 for each of the two named plaintiffs to be "reasonable").

The requested $15,000 service awards are also reasonable in light of the recovery available to all Class Members and the total Settlement Fund. The requested service awards are only $9,000 more than the minimum recovery available to a Class Member whose communication was intercepted only once and are equivalent to the recovery available to those Class Members whose communications were intercepted over 100 times. *See* Emery Decl. ¶ 37. Each service award represents only 00.47% of the total maximum settlement fund. *See*

38

*Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 125 (S.D.N.Y. 2001) (granting incentive awards in part because they were "small in relation to the . . . fund from which the awards will be made"); *Manley v. Midan Rest. Inc.*, No. 14 Civ. 1693, 2017 WL 1155916, at *13 (S.D.N.Y. Mar. 27, 2017) ("The $15,000.00 service award represents approximately 1.64% of the $912,500.00 settlement fund. This is well within the range of service awards recently approved in this District."). The Named Plaintiffs' requests for service awards—which are in line with the recovery available to all Class Members and small in light of the Class's overall recovery— should be granted in recognition of the breadth of services they rendered on behalf of the class and the risks they took to be publicly named as plaintiffs.

## CONCLUSION

The Plaintiffs respectfully requests that the Court grant Plaintiffs' motion for approval of the Settlement Agreement and enter the proposed approval order which is attached to the Emery Declaration as Exhibit 1.

Dated:  August 23, 2021
        New York, New York

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP


_____/s_____

Richard D. Emery
Samuel Shapiro
Scout Katovich

600 Fifth Avenue, 10th Floor
New York, New York 10020
 (212) 763-5000

WIGGIN AND DANA, LLP
James I. Glasser
Tadhg Dooley

437 Madison Avenue, 35th Floor
New York, New York 10022
(212) 490-1700

*Attorneys for Plaintiffs*

40