18 CV 6720 (NGG) (PK)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DANIELLE ROSENFELD and VINCENT GARCIA, on behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

TARA LENICH; LU-SHAWN M. THOMPSON, as Administrator of ESTATE OF KENNETH P. THOMPSON; ERIC GONZALEZ; MARK FELDMAN; WILLIAM SCHAEFER; BRIAN DONAHUE; WILLIAM POWER; MICHAEL DOWLING; JOSEPH PIRAINO; ROBERT KENAVAN; and THE CITY OF NEW YORK,

Defendants.

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES AND COSTS AND IN SUPPORT OF FINAL APPROVAL IN ALL OTHER RESPECTS**

***GEORGIA M. PESTANA***
*Corporation Counsel of the City of New York*
*Attorney for Defendants City of New York, Lu-Shawn Thompson, Eric Gonzalez, Mark Feldman, William Schaeffer, Brian Donohue, William Power, Michael Dowling, Joseph Piraino, and Robert Kenavan*
*100 Church Street*
*New York, N.Y. 10007*
*Of Counsel Joshua J. Lax*
*Tel: (212) 356-3358*

Served September 13, 2021

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......... II

TABLE OF CONTENTS .......... I

PRELIMINARY STATEMENT .......... 1

ARGUMENT .......... 2

POINT I: THE PERCENTAGE OF THE CLASS FUND ALLOCATED TO ATTORNEYS' FEES SHOULD BE REDUCED BECAUSE PLAINTIFFS FAILED TO SUPPORT THEIR LODESTAR AND THE PERCENTAGE FAILS THE LODESTAR TEST .......... 2

POINT II: THE COURT SHOULD REJECT PLAINTIFF'S REQUESTS FOR COSTS .......... 9

POINT III: NO JUDGMENT SHOULD BE ENTERED .......... 10

POINT IV: CITY DEFENDANTS HAVE COMPLIED WITH THE CAFA NOTICE .......... 10

CONCLUSION .......... 11

**TABLE OF AUTHORITIES**

**Cases** **Pages**

Anania v. United States,
No. 16-CV-3542 (SJF) (ARL),
2021 U.S. Dist. LEXIS 4098 (E.D.N.Y. Jan. 8, 2021)....6

Callari v. Blackman Plumbing Supply, Inc.,
No. CV 11-3655 (ADS) (AKT), 2020 U.S. Dist. LEXIS 79882 (E.D.N.Y.
May 4, 2020)....6

Calvo v. City of New York,
No. 14-CV-7246 (VEC),
2017 U.S. Dist. LEXIS 150210 (S.D.N.Y. Sep. 15, 2017)....4

Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay,
No. CV 10-2262 (DRH)(AYS), 2019 U.S. Dist. LEXIS 102840 (E.D.N.Y.
June 18, 2019)....7

In re Colgate-Palmolive Co. ERISA Litig.,
36 F. Supp. 3d 344 (S.D.N.Y. 2014)....8

Crews v. Cty. of Nassau,
No. 06-CV-2610 (JFB)(GRB), 2019 U.S. Dist. LEXIS 218129 (E.D.N.Y.
Dec. 18, 2019).... 6-7

DCH Auto Grp. (USA) Inc. v. Fit You Best Auto., Inc.,
No. CV-05-2973 (NG) (JMA),
2006 U.S. Dist. LEXIS 4298 (E.D.N.Y. Jan. 10, 2006)....9

Fox v. Triborough Bridge & Tunnel Auth.,
No. 17-CV-4143 (NGG) (JO), 2020 U.S. Dist. LEXIS 230517 (E.D.N.Y. Dec.
8, 2020)....8

Goldberger v. Integrated Res.,
209 F.3d 43 (2d Cir. 2000) ....3

Hargroves v. City of New York,
No. 03-CV-1668 (RRM) (VMS), 2014 U.S. Dist. LEXIS 42534 (E.D.N.Y.
Jan. 6, 2014)....9-10

Haylett v. Sutton,
No. 15-CV-223, 2019 U.S. Dist. LEXIS 134712,
2019 WL 8128547 (E.D.N.Y. Aug. 8, 2019)
adopted by 2020 U.S. Dist. LEXIS 38692,
2020 WL 1061406 (E.D.N.Y. Mar. 5, 2020)....6

**Cases** **Pages**

In re Holocaust Victim Assets Litig., 270 F. Supp. 2d 313 (E.D.N.Y. 2002) ... 3

Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281 (E.D.N.Y. 2012) ... 4

Landstar Sys. v. Am. Landstar Logistics Corp., 2020 U.S. Dist. LEXIS 21774 (E.D.N.Y. Feb. 6, 2020) ... 9

Martinez v. City of New York, 330 F.R.D. 60 (E.D.N.Y. 2019) ... 6

Murray v. Marshall, No. 15-CV-500, 2020 U.S. Dist. LEXIS 47219, 2020 WL 5899851 (E.D.N.Y. Mar. 16, 2020) ... 6

N.Y. Ass'n for Retarded Children v. Cuomo, No. 72 CV 356 (RJD), 2019 U.S. Dist. LEXIS 124036 (E.D.N.Y. July 22, 2019) ... 7

Restivo v. Nassau Cty., No. 06-CV-6720(JS)(SIL), 2019 U.S. Dist. LEXIS 1827 (E.D.N.Y. Jan. 4, 2019) ... 7

In re Visa Check/Mastermoney Antitrust Litig., 297 F. Supp. 2d 503 (E.D.N.Y. 2003) ... 3

Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96 (2d Cir. 2005) ... 8

**Statutes**

28 U.S.C. § 1715 ... 2, 10

42 U.S.C. § 1983 ... 6, 8

Fed. R. Civ. P. 58 ... 10

**PRELIMINARY STATEMENT**

For a period of time in 2015 and 2016 defendant Tara Lenich, then an Assistant District Attorney ("ADA") with the Kings County District Attorney's Office ("KCDAO"), forged judicial orders and search warrants in order to wiretap two cellular phones belonging to former ADA Stephanie Rosenfeld and New York City Police Department Detective Jarrett Lemieux. Stephanie Rosenfeld and Mr. Lemieux brought their own actions. Stephanie Rosenfeld was represented by attorneys from Emery Celli Brinckerhoff Abady Ward & Maazel LLP ("ECBAWM"), and Mr. Lemieux was represented by attorneys from Wiggin & Dana. ECBAWM and Wiggin & Dana teamed up and brought this action, where plaintiffs Danielle Rosenfeld and Victor Garcia brought action on behalf of themselves and of all those whose communications with Stephanie Rosenfeld and Lemieux may have been intercepted against the City of New York, Kings County DA Eric Gonzalez, former Kings County DA Kenneth P. Thompson (by his estate), Mark Feldman, William Schaeffer, Brian Donohue, William Power, Michael Dowling, Joseph Piraino, and Brian Kenavan (collectively, the "City Defendants").

All three actions involved the same defendants. All three actions had identical discovery, with the exception of damages related discovery unique to Stephanie Rosenfeld and Mr. Lemieux. The named plaintiffs released defendant Lenich from this litigation in exchange for her "truthful" testimony, a bargain for which plaintiffs here appear to have received nothing they were not otherwise entitled to. Settlements were reached in principal in all three cases with the City defendants at approximately the same time. The only remaining litigation related to the underlying events is resolution of this motion and distribution of the class settlement if final approval is granted. City defendants agree with plaintiffs that final approval should be granted. In the parties' settlement agreement, defendants reserved the right to challenge the requested fee award to class counsel based on the concerns discussed below. Specifically, the Court should

reduce the percentage of the class fund plaintiffs request in attorneys' fees because it fails the lodestar crosscheck. Plaintiffs fail to substantiate the basis for the lodestar, and the hourly rates and number of hours are excessive to a degree that cannot be overstated. In addition, the Court should deny plaintiffs' requests for costs, and in the alternative reduce the requested costs as some categories are unsubstantiated or otherwise unreasonable. Next, the Court should deny plaintiff's request that judgment be entered, as there is no provision allowing for entry of a judgment in the parties' settlement agreement. Finally, City defendants note that they have complied with the notice requirements of the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA"), and submit these documents in conjunction with the Motion for Final Approval.

## ARGUMENT

### POINT I: THE PERCENTAGE OF THE CLASS FUND ALLOCATED TO ATTORNEYS' FEES SHOULD BE REDUCED BECAUSE PLAINTIFFS FAILED TO SUPPORT THEIR LODESTAR AND THE PERCENTAGE FAILS THE LODESTAR TEST

Plaintiffs have moved this Court to grant them a percentage of the class fund as attorneys' fees. While defendants agree that some percentage of the fund should be allocated to attorneys' fees, the one third of the fund is significantly greater than that to which plaintiffs are entitled. Although the discussion below focuses on the lodestar and the required lodestar check, City defendants note that plaintiffs overstate certain aspects of this litigation to justify the overall reasonableness of their request. First, although there is a split in the Circuits as to whether a municipality may be liable under the Federal Wiretap Statute, and there was no direct precedent from the Second Circuit, there was a favorable decision by the Second Circuit in an analogous statute. Thus, the risk that plaintiffs would lose the claim for municipal liability was no different than any other case. Even if they had, plaintiffs may have had other avenues to such liability, which counsel alleged in the actions by Stephanie Rosenfeld and Mr. Lemieux. The majority of

the work regarding the more novel issues were focused on the motion practice, and as will be discussed more fully below, almost completely overlapped with the companion cases. The discovery in these cases was not unusually complex or unique, and in fact, plaintiffs here produced little to no discovery. Moreover, the facts regarding defendant Lenich's criminal activity were not in dispute. In terms of the class recovery, plaintiffs had a unique advantages in obtaining responses from class members. First, the interceptions were traced by phone number, allowing an efficient means to identify and contact class members. More important, many of the class members knew the targets of the wiretap, making them mor likely to file a claim rather than disregard the attempts to contact them. Lastly, plaintiffs are seeking astronomical rates for counsel which would already account for various contention they make in favor of their request. Thus, a multiplier of plaintiffs' lodestar is not justified in this matter. See e.g. Goldberger v. Integrated Res., 209 F.3d 43, 54-56 (2d Cir. 2000)(rejecting multiplier of lodestar based on risk and quality of representation).

The reasonableness of plaintiff's request is measured by reference to counsel's lodestar. "Even when the percentage method is used, however, the Second Circuit 'encourages the practice of requiring documentation of hours as a 'cross-check' on the reasonableness of the requested percentage.' Courts in this circuit commonly adhere to this practice." In re Visa Check/Mastermoney Antitrust Litig., 297 F. Supp. 2d 503, 520-21 (E.D.N.Y. 2003)(citing Goldberger, supra, 209 F.3d at 50). Indeed, as one Court in this district noted, "the entire settlement approval process proceeds on an inherent distrust of class action attorneys who expect to be paid a percentage of the settlement." In re Holocaust Victim Assets Litig., 270 F. Supp. 2d 313, 322 (E.D.N.Y. 2002). Thus, the lodestar crosscheck aids the Court in its goal "to prevent unwarranted windfalls for attorneys." Goldberger, supra, 209 F.3d at 49.

To obtain an appropriate award, plaintiffs are required to provide documentation supporting their request. "'[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates,' including the 'reasonable hourly rates prevailing in the district for similar services provided by attorneys with comparable skill and experience.'" Calvo v. City of New York, No. 14-CV-7246 (VEC), 2017 U.S. Dist. LEXIS 150210, at *5 (S.D.N.Y. Sep. 15, 2017) (citations omitted). In other words, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed." Hugee v. Kimso Apartments, LLC, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012).

Here, plaintiffs merely provide a chart listing the names of attorneys, their requested hourly rate, and a total numbers of hours worked. This is insufficient to establish the amount of the lodestar because there is no documentation explaining why this lodestar is reasonable. There is no indication of why the principle attorneys who worked on this case, Richard Emery, Sam Shapiro, Jessica Clarke, Scout Katovich, James Glasser, and Tadhg Dooley, worked the number of hours they did on this case. There is no opportunity to do any review for duplicative work, administrative work billed as attorney work, travel time, work that cannot be included in a fee request, or excessive time spent on specific tasks. Although the Court is not required to fully scrutinize counsel's billing records, the decisions cited above make clear that some scrutiny is required. On the surface, the hours worked appear extravagant in light of the fact a single attorney represented City defendants in this matter, and handled all motions, discovery productions, and settlement negotiations. For all that work, defense counsel billing's records reflect 374.45 were entered, with perhaps an additional six or seven hours that have not been entered accounting for meetings with other Law Department attorneys and some tasks that have not yet been entered.

Plaintiffs on the other hand claim 425.1 hours for Mr. Dooley, 310.40 hours for Mr. Emery, 286.70 for Mr. Shapiro, and 252.20 hours for Ms. Katovich, 96.30 hours for Ms. Clarke, and 97.5 hours for Mr. Glasser. Thus, plaintiffs assert that they reasonably required at least five attorneys spending four times as many hours to litigate this matter than defense counsel, where almost all the discovery was produced by defendants, the work product was often identical to two other matters for which counsel was separately compensated, and counsel represent that collectively are experts on every aspect of this litigation warranting high hourly rates. In addition, counsel lists numerous attorneys who never appeared in this action but billed between 0.3 hours to 24.4 hours respectively. There is no indication what these attorneys did for this case. For example, these various attorneys at Wiggin & Dana billed 109.1 hours which accounts for seventeen percent of the total hours in their lodestar, or approximately ten percent of the total dollar amount of that firm's lodestar.

Moreover, plaintiff's counsel not only declined to submit their records with their motion, they refused to provide their records. During the negotiation of the settlement of the class settlement, counsel asked defendants to consent to their fee request. City defendants asked to see counsel's records, but they refused. In advance of plaintiffs filing this motion, plaintiffs again asked City defendants to consent. Defense counsel asked to see the billing records again, and plaintiffs again refused.

Plaintiffs' refusal to share or submit their records is probative of the reasonableness of the asserted hours worked. This decision highlights a key fact which is that this matter was a companion action to two other lawsuits. When this case was filed, attorneys from ECBAWM had already filed the complaint in the Stephanie Rosenfeld matter, and the parties had in that matter had briefed the City defendants' motion to dismiss. Issues related to discovery about the

interceptions and some other limited discovery occurred, all under the Stephanie Rosenfeld matter. As a result, a large portion of the legal research related to motion practice and the discovery disputes had already occurred by the time this case was filed. Thereafter, all three cases were litigated concurrently, with discovery identical with the exception of damages related discovery for Stephanie Rosenfeld and Mr. Lemeiux.

The refusal to provide the records suggests that one explanation of the high number of hours owes to the failure of counsel to disaggregate the work done on all three matters or pro-rate the hours offered to support the lodestar here. For example, plaintiffs claim that included in these hours is time spent investigating and drafting the complaint. The complaint in this matter is largely copied and pasted from the Stephanie Rosenfeld complaint.

In addition, the rates claimed by the various attorneys are also excessive, with some claiming unheard-of hourly rates in this District. As one Court in this district recently noted

> In recent § 1983 cases, courts in this District have set reasonable hourly rates at approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-$100 for paralegals. See Murray v. Marshall, No. 15-CV-500, 2020 U.S. Dist. LEXIS 47219, 2020 WL 5899851, at *2 (E.D.N.Y. Mar. 16, 2020), adopted as modified by 2020 U.S. Dist. LEXIS 47219, 2020 WL 3819075 (E.D.N.Y. July 8, 2020); Haylett v. Sutton, No. 15-CV-223, 2019 U.S. Dist. LEXIS 134712, 2019 WL 8128547, at *3 (E.D.N.Y. Aug. 8, 2019), adopted by 2020 U.S. Dist. LEXIS 38692, 2020 WL 1061406 (E.D.N.Y. Mar. 5, 2020); Martinez v. City of New York, 330 F.R.D. 60, 70 (E.D.N.Y. 2019).

Anania v. United States, No. 16-CV-3542 (SJF) (ARL), 2021 U.S. Dist. LEXIS 4098, at *11 (E.D.N.Y. Jan. 8, 2021). These prevailing rates have been utilized in other types of civil rights cases. See e.g. Callari v. Blackman Plumbing Supply, Inc., No. CV 11-3655 (ADS) (AKT), 2020 U.S. Dist. LEXIS 79882, at *31-32 (E.D.N.Y. May 4, 2020). At the same time, Courts recognize that attorneys may be entitled to a higher rate in this District. See e.g. Crews v. Cty. of Nassau, No. 06-CV-2610 (JFB)(GRB), 2019 U.S. Dist. LEXIS 218129, at *25-26 (E.D.N.Y. Dec. 18,

2019)(awarding $450 per hour to an experienced trial attorney); N.Y. Ass'n for Retarded Children v. Cuomo, No. 72 CV 356 (RJD), 2019 U.S. Dist. LEXIS 124036, at *18 (E.D.N.Y. July 22, 2019) (awarding three attorneys with over thirty years of experience $500, $425, and $450 respectively); Centro De La Comunidad Hispana De Locust Valley v. Town of Oyster Bay, No. CV 10-2262 (DRH)(AYS), 2019 U.S. Dist. LEXIS 102840, at *17 (E.D.N.Y. June 18, 2019) ("Thus, even cases litigated within the Eastern District may warrant an award based upon an hourly rate at the high end of the alleged Southern District rate of $600. Such high rates of compensation are properly 'reserved for expert trial attorneys with extensive experience before the federal bar,' who are specialists 'recognized by their peers as leaders and experts in their field.'). The highest rate City defendants could locate as awarded was $655 per hour for a particularly experienced appellate attorney. See Restivo v. Nassau Cty., No. 06-CV-6720(JS)(SIL), 2019 U.S. Dist. LEXIS 1827, at *7 (E.D.N.Y. Jan. 4, 2019). Otherwise, typically the highest award for the most experienced and distinguished counsel is $600 per hour. See id.; Centro De La Comunidad Hispana, supra, at *33.

Mr. Emery and Mr. Glasser seek the highest rates, at $900 and $750, respectively. The rates requested for other attorneys appear to be scaled to these rates. For none of the attorneys does plaintiff provide any authority that support an entitlement to such exorbitant rates. Nor does plaintiff demonstrate that there is any basis to depart from the prevailing rates. In other words, while Mr. Emery and Mr. Glasser may be experienced, there is no basis to exceed the range of $450 to $600 per hour that is awarded to the most experienced civil rights counsel. Similarly, there is no basis to award ECBAWM associates double the normal rate for associates.

Mr. Dooley, who purports to bill over 425 hours, seeks a rate of $575. Mr. Dooley "provides a great deal of information about his . . . background, all of it quite impressive, but leaves out perhaps the most salient information; namely, the year of [his] admission to practice and their

experience in handling Section 1983 cases like this one." Fox v. Triborough Bridge & Tunnel Auth., No. 17-CV-4143 (NGG) (JO), 2020 U.S. Dist. LEXIS 230517, at *11 (E.D.N.Y. Dec. 8, 2020). Further, Wiggin & Dana provides nothing to show they are experts in civil rights cases. Instead, their focus appears to be on experience defending against class actions. While that may have been helpful in some regard, the reality is that ECBAWM had little to gain from the additional firm, since as they do not hesitate to point out, they have a history of involvement in significant cases and class litigation. At the same time, plaintiffs' refusal to turn over billing records further frustrate any lodestar check because neither the Court nor counsel can assess if the requested rates are reasonable for the type of work performed by each attorney.

Lastly, plaintiffs suggest that they are only seeking a modest multiplier of their fees of 1.09. This is not true. If the lodestar is adjusted to comport with what has been found to be reasonable under relevant precedent, that lodestar would drop by thirty to forty percent at least. As a result, the multiplier approaches a factor of 2, and depending on the actual lodestar, a multiplier greater than 2. Plaintiff cites authority that such multipliers are permissible, but their main authority is clear that the empirical studies that underly the Court's decision in that matter are specific to ERISA cases, and that ERISA awards are higher than other areas of the law. In re Colgate-Palmolive Co. ERISA Litig., 36 F. Supp. 3d 344, 350-51 (S.D.N.Y. 2014). Similarly, plaintiffs' citation to the Walmart case is misplaced, as the Court's discussion there focused entirely on megafund class settlements, not the sort involved here. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 123 (2d Cir. 2005)

Plaintiffs seek to get the best of everything: high fees, a high number of hours, and inflated lodestar and a modifier. This is unreasonable. Either they get a high rate and a lower number of hours because of the efficiency of a skilled and experienced attorney, or they get lower

rates and more hours because that efficiency is lacking. The hourly rates are higher to account for risk, complexity, and quality of lawyering, or they get lower rates with a multiplier. At base, however, is that plaintiffs' counsel should not be awarded what they are seeking in the absence of any documentation that supports their lodestar.

**POINT II: THE COURT SHOULD REJECT PLAINTIFF'S REQUESTS FOR COSTS**

Plaintiffs seek repayment of costs. At the outset, City defendants note that the settlement agreement in this matter does not permit plaintiffs to recover costs associated with the litigation.

In so far as plaintiffs are entitled to seek costs of the litigation, they have not submitted any documentation of their expenses. A prevailing party may seek costs that are "'necessary for the representation of the client,' and are 'not part of the attorneys' ordinary overhead.'" Landstar Sys. v. Am. Landstar Logistics Corp., 2020 U.S. Dist. LEXIS 21774, at *28 (E.D.N.Y. Feb. 6, 2020). In addition, "[i]f the plaintiff fails to submit adequate supporting documentation for the costs requested, the court may reduce the costs." Ibid. Here, plaintiff provided no documentation for any of his costs.

Plaintiff also seeks costs for discovery management and legal research. Without documentation, it is unclear what these costs include. As to discovery management, it is unclear what this means or why it is not included in the general overhead of the firm. As to research costs, there is some authority that this is an non-compensable cost in a fee application. See DCH Auto Grp. (USA) Inc. v. Fit You Best Auto., Inc., No. CV-05-2973 (NG) (JMA), 2006 U.S. Dist. LEXIS 4298, at *10-11 (E.D.N.Y. Jan. 10, 2006). Other Courts allow for payment of these costs, but require the requesting party must show they would bill a client for these costs and that the services attendant to these costs are not otherwise accounted in their rate. Hargroves v. City of New York,

No. 03-CV-1668 (RRM) (VMS), 2014 U.S. Dist. LEXIS 42534, at *76-78 (E.D.N.Y. Jan. 6, 2014). Much like their lodestar, plaintiffs fail to make the requisite showing that they are entitled to these costs, and therefore, these requests should be denied.

**POINT III:  NO JUDGMENT SHOULD BE ENTERED**

Plaintiffs' proposed order includes a provision seeking a judgment to be entered under FED. R. CIV. P. 58.  No such judgment is provided for in the parties' settlement agreement, nor has plaintiff proposed a judgment to defendants.  As a result, the Court should deny plaintiffs' request for entry of a judgment. Instead, the Court should endorse the settlement agreement and order final approval.  No entry of judgment is necessary.

**POINT IV:  CITY DEFENDANTS HAVE COMPLIED WITH THE CAFA NOTICE**

City defendants have complied with the Class Action Fairness Act ("CAFA") notice requirements as set forth in 28 U.S.C. § 1715. (Declaration of Joshua J. Lax, dated September 13, 2021, at ¶¶ 2-4, Exhibits "A" to "B").

**CONCLUSION**

For the foregoing reasons, the City Defendants respectfully request an Order dismissing the Complaint in its entirety as against them, with prejudice, and granting such other and further relief as the Court deems just and proper, together with costs, expenses and attorneys' fees.

Dated: New York, New York
September 13, 2021

GEORGIA M. PESTANA
Corporation Counsel of the City of New York
*Attorney for the City Defendants*
100 Church Street
New York, NY 10007
(212) 356-3538
jlax@law.nyc.gov

By: ____________/s/________________
Joshua J. Lax
*Senior* Counsel