UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIELLE ROSENFELD and VINCENT GARCIA, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br> -against-<br><br>TARA LENICH; CITY OF NEW YORK; LU-SHAWN M. THOMPSON, AS ADMINISTRATOR OF ESTATE OF KENNETH P. THOMPSON; ERIC GONZALEZ; MARK FELDMAN; WILLIAM SCHAEFER; BRIAN DONOHUE; WILLIAM POWER; MICHAEL DOWLING; JOSEPH PIRAINO; and ROBERT KENAVAN,<br><br>   Defendants. | No. 18 Civ. 6720 (NGG)(PK) |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE PLAINTIFF CLASS'S MOTION FOR ATTORNEYS' FEES AND COSTS**

Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000


Wiggin and Dana LLP
437 Madison Avenue, 35th Floor
New York, New York 10022
(212) 490-1700

## TABLE OF CONTENTS

PAGE NO.

TABLE OF AUTHORITIES ...................................................................................................ii-iii

PRELIMINARY STATEMENT ................................................................................................1

    I.    PLAINTIFFS' REQUESTED ATTORNEYS' FEES ARE REASONABLE ...............2

        A.    The Requested Award Should Be Assessed Using the Percentage Method ...........................................................................................................2

        B.    Plaintiffs' Documentation of Class Counsel's Lodestar is Sufficient .........3

        C.    The Fee Request is Reasonable Under the *Goldberger* Factors ..................4

            1.    Class Counsel's Time and Labor ......................................................4

            2.    Magnitude, Complexity, and Risk of Litigation ..............................5

            3.    Quality of Representation .................................................................6

            4.    Fee in Relation to Settlement ............................................................7

            5.    Public Policy Considerations ............................................................7

        D.    The Lodestar Check Supports the Requested Fee Award ............................8

    II.   PLAINTIFFS SHOULD BE AWARDED REASONABLE COSTS .........................10

    III. ENTRY OF JUDGMENT IS REQUIRED ................................................................10

CONCLUSION ..........................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*,
    504 F. Supp. 3d 265 (S.D.N.Y. 2020) .............................................................................. 10

*Blondell v. Bouton*,
    2021 WL 4173679 (E.D.N.Y. Aug. 30, 2021) ..................................................................... 4

*Brack v. MTA New York City Transit*,
    2019 WL 8806149 (E.D.N.Y. Apr. 26, 2019) ..................................................................... 7

*Calle v. Elite Specialty Coatings Plus, Inc.*,
    2014 WL 6621081 (E.D.N.Y. Nov. 21, 2014) .................................................................... 4

*Calvo v. City of New York*,
    2017 WL 4119280 (S.D.N.Y. Sept. 15, 2017) .................................................................... 3

*Davis v. J.P. Morgan Chase & Co.*,
    827 F. Supp. 2d 172 (W.D.N.Y. 2011) ............................................................................... 3

*Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
    925 F.3d 63 (2d Cir. 2019) ................................................................................................. 3

*Goldberger v. Integrated Res.*,
    209 F.3d 43 (2d Cir. 2000) ......................................................................................... 2, 4, 8

*Grice v. Pepsi Beverages Co.*,
    363 F. Supp. 3d 401 (S.D.N.Y. 2019) ................................................................................ 3

*Hugee v. Kimso Apartments, LLC*,
    852 F. Supp. 2d 281 (E.D.N.Y. 2012) ................................................................................ 3

*In re BioScrip, Inc. Sec. Litig.*,
    273 F. Supp. 3d 474 (S.D.N.Y. 2017) ................................................................................ 9

*In re Comverse Tech., Inc. Sec. Litig.*,
    2010 WL 2653354 (E.D.N.Y. June 24, 2010) .................................................................... 9

*In re Initial Pub. Offering Sec. Litig.*,
    671 F. Supp. 2d 467 (S.D.N.Y. 2009) ................................................................................ 8

*In re KeySpan Sec. Litig.*,
    2005 WL 3093399 (E.D.N.Y. Sept. 30, 2005) .................................................................. 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    2019 WL 6888488 (E.D.N.Y. Dec. 16, 2019) .................................................................... 4

*In re Visa Check/Mastermoney Antitrust Litig.*,
 297 F. Supp. 2d 503 (E.D.N.Y. 2003) .............................................................................. 3

*In re WorldCom, Inc. Sec. Litig.*,
 388 F. Supp. 2d 319 (S.D.N.Y. 2005) ............................................................................... 4

*Maley v. Del Global Tech. Corp.*,
 186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................................................... 9

*Rasulev v. Good Care Agency, Inc.*,
 No. 16 Civ. 1993, Dkt. 70 (E.D.N.Y. July 28, 2017) ........................................................ 9

*Red Bull Assocs. v. Best W. Int'l, Inc.*,
 862 F.2d 963 (2d Cir. 1988) .............................................................................................. 8

*Rosenfeld v. Lenich*,
 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) ................................................................. 2, 7

*Sykes v. Harris*,
 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ................................................................... 9

*Tanski v. AvalonBay Communities, Inc.*,
 2020 WL 2733989 (E.D.N.Y. May 26, 2020) ................................................................... 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005) ................................................................................................ 2

**Statutes**

42 U.S.C. § 1988 .......................................................................................................................... 3

## PRELIMINARY STATEMENT

After three years of complex litigation with no promise of recovery, Class Counsel have secured an extraordinary settlement for the Class. Pending final approval, 162 claimants, comprising roughly half the Class, will each receive between $6,000 and $15,000 as compensation for the privacy rights' violations they suffered. This amounts to between 60% and 150% of the statutory maximum amount that each Class Member could recover if he or she pursued a claim individually. Had Class Counsel not filed this lawsuit on the day before the statute of limitations expired, not one of these individuals would have recovered even a dollar.

The City Defendants have agreed to pay $3,200,000 into a settlement fund, yet they oppose Class Counsel's request to receive one third of that fund as compensation for their work. The City Defendants do not seriously contend that a one-third payment is unreasonable under the *Goldberger* factors that courts in this Circuit use to award attorneys' fees in class settlements. Instead, the City Defendants fixate on the calculation of Class Counsel's lodestar. But where a percentage-of-fund approach is used, lodestar is merely a cross-check; courts need not scrutinize hours and rates, as they might under a fee-shifting statute.

Class Counsel's fee request is reasonable because they have taken on substantial risk and created significant value for the Class, while also exposing deficiencies in the City Defendants' protection of public rights. This type of litigation should be incentivized, not penalized. Importantly, the requested fee award will not in any way diminish the Class's recovery. Any portion of the fund not distributed to Class Counsel will be returned to the City. That may explain the City Defendants' recalcitrance, but it is no reason for the Court to reject Class Counsel's entirely reasonable fee request.

## I. PLAINTIFFS' REQUESTED ATTORNEYS' FEES ARE REASONABLE

### A. The Requested Award Should Be Assessed Using the Percentage Method

Consistent with "[t]he trend in this Circuit," Plaintiffs' fee application is based on "the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).[1] Under this percentage-of-fund approach, the lodestar is "used as a mere cross-check," and the court does not need to "exhaustively scrutinize[]" the hours documented by counsel or engage in "the cumbersome, enervating, and often surrealistic process of lodestar computation." *Goldberger v. Integrated Res.*, 209 F.3d 43, 49-50 (2d Cir. 2000). "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Id.* at 50.

Plaintiffs' burden is thus not to establish the reasonableness of Class Counsel's lodestar, but rather to establish the reasonableness of the requested fees under the six factors identified by the Second Circuit in *Goldberger*. *See Wal Mart Stores, Inc.*, 396 F.3d at 121 (*Goldberger* factors "ultimately determine the reasonableness" of the requested fee). As this Court has already recognized, "[c]ourts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness." *Rosenfeld v. Lenich*, 2021 WL 508339, at *6 (E.D.N.Y. Feb. 11, 2021) ("*Preliminary Approval Opinion*").

The City Defendants ignore this controlling precedent, pretending that this fee application is governed by principles that apply to statutory fee applications in non-class cases. Defs' Br., Dkt. 111, at 3. But Second Circuit precedent is clear: "Fee-shifting principles and the common-fund doctrine occupy separate realms." *Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver*

---

[1] Unless otherwise noted, all internal citations and quotation marks are omitted and all alterations are adopted.

*Fam. Tr.*, 925 F.3d 63, 68 (2d Cir. 2019). Under the percentage-of-fund approach, courts "can account for contingency risk where such risk exists, and . . . may therefore exceed what would be a 'reasonable fee' in the fee-shifting context." *Id*. at 70.

### B. Plaintiffs' Documentation of Class Counsel's Lodestar is Sufficient

Plaintiffs support their lodestar cross-check with sworn affidavits from Class Counsel providing the number of hours expended and hourly rates for each timekeeper. *See* Emery Decl., Dkt. 106, ¶ 55; Glasser Decl., Dkt. 108, ¶ 12. These affidavits also describe the many steps taken by Class Counsel in this litigation. *See* Emery Decl. ¶¶ 9-33, 39, 46-47. This is more than sufficient for purposes of a lodestar cross-check, which is intended solely to provide a "rough indicator of the propriety of a fee request." *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011).

The City Defendants' contention that Class Counsel must submit detailed time records for a lodestar cross-check is simply incorrect.[2] Courts in this Circuit regularly evaluate the reasonableness of a requested fee based on exactly the kind of documentation submitted here, and sometimes far less.[3] *See, e.g.*, *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 411 (S.D.N.Y. 2019) (accepting attorney declarations without timesheets "given that where the lodestar is used as a mere cross-check, the hours documented by counsel need not be

---

[2] The City Defendants' cited cases are not to the contrary. Both address statutory fee applications, not lodestar cross-checks in a common fund fee application. *See Calvo v. City of New York*, 2017 WL 4119280, at *2 (S.D.N.Y. Sept. 15, 2017) (fee application under 42 U.S.C. § 1988(b)); *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 297 (E.D.N.Y. 2012) (fee application under New York City Human Rights Law).

[3] *In re Visa Check/Mastermoney Antitrust Litig*., 297 F. Supp. 2d 503, 520-21 (E.D.N.Y. 2003), which the City Defendants cite for the basic proposition that "the Second Circuit encourages the practice of requiring documentation of hours as a 'cross-check,'" does not suggest that the "documentation" required goes beyond that submitted here.

3

exhaustively scrutinized").[4]

Submitting detailed timesheets is not required and doing so burdens both counsel and the court with little benefit, given that courts "expressly decline[] to scrutinize each individual time entry" when performing a lodestar cross-check. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2019 WL 6888488, at *24 (E.D.N.Y. Dec. 16, 2019). Contrary to the City Defendants' bald assertion—accompanied by no citation to authority—Plaintiffs are also not required to provide opposing counsel with their time records. No reason existed for Class Counsel to spend time—more billable hours—redacting their time records so they could be produced to the City Defendants when the law is clear that Plaintiffs are not required to submit such records to support their fee request. Nevertheless, if the Court deems it necessary, Class Counsel will gladly submit their time records for *in camera* review.

**C. The Fee Request is Reasonable Under the *Goldberger* Factors**

The City Defendants do not seriously contest the reasonableness of the requested fees under the *Goldberger* factors, all of which favor granting the requested fee.

**1. Class Counsel's Time and Labor**

Class Counsel have devoted significant time and effort to investigating and litigating this case for over three years. Class Counsel identified the Named Plaintiffs; researched and drafted the Complaint; opposed the City Defendants' motion to dismiss; opposed Defendant Lenich's motion to strike the class allegations; responded to discovery requests; reviewed thousands of

---

[4] *See also Blondell v. Bouton*, 2021 WL 4173679, at *5 (E.D.N.Y. Aug. 30, 2021) ("Although Class Counsel has not submitted contemporaneous attorney time records, the court may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties."); *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 354 (S.D.N.Y. 2005) (approving fee application and performing lodestar cross-check where documentation included only an attorney affidavit and a summary of hourly rates and number of hours worked); *cf. Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13 Civ. 6126 (NGG)(VMS), 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) (approving one-third fee award in FLSA settlement where lodestar was based solely on counsel's representations).

4

pages of documents and metadata produced by the City Defendants; negotiated a settlement with Lenich; negotiated the Settlement Agreement with the City Defendants; prepared Plaintiffs' motion for preliminary approval of the Settlement; oversaw administration of the Notice and Claim process, including issuing subpoenas to identify contact information for Class Members and maximize the response of the Class; and prepared this motion. *See* Emery Decl. ¶¶ 9-33, 39, 46-47. The City Defendants dispute none of this.

Contrary to the City Defendants' unsupported speculation, each of the firms representing Plaintiffs kept separate matter numbers for the class case and the individuals cases on which they worked, and the attorneys and paralegals divided their time accordingly. Where tasks benefitted both the individual cases and the class case (such as attending one settlement conference for all three cases), timekeepers divided their time between the matters. *See* Emery Decl., September 20, 2021 (Emery II Decl.) ¶¶ 10-13; Glasser Decl., September 20, 2021 (Glasser II Decl.) ¶¶ 10-12. The City Defendants offer no evidence to the contrary.

### 2. Magnitude, Complexity, and Risk of Litigation

Without any real arguments to contest the magnitude, complexity, or risk of this litigation, the City Defendants allege that Plaintiffs "overstate certain aspects of this litigation to justify the reasonableness of their request." Defs' Br. at 2. This serious allegation of puffery is backed up by reference only to an unnamed "favorable decision" on an unnamed "analogous statute"—a decision the City Defendants previously claimed was "not as strong as plaintiff[s] suggest," City Defs.' Reply MOL, Dkt.56, at 15—and the assertion that, had Plaintiffs lost on municipal liability, they "may have had other avenues to such liability," which, too, remain unnamed. Defs' Br. at 2. The City Defendants' unremarkable observation that the "majority of the work regarding the more novel issues were focused on the motion practice" does nothing to diminish the challenging nature of the legal issues or the real risk of non-recovery if the Court

5

determined the City could not be liable under the Wiretap Act. *See* Opening Br., Dkt. 107, at 28.

Worse, the City Defendants falsely claim that the novel issues in this litigation "almost completely overlapped with the companion cases" and that "a large portion of the legal research related to motion practice" had already been completed in those cases. Defs' Br. at 3, 6. In fact, in the Stephanie Rosenfeld case, the City Defendants failed to argue that municipalities cannot be held liable under the Wiretap Act. *See Rosenfeld v. Lenich et al*, 17 Civ. 7299 ("*Rosenfeld I*"), Dkt. 64; Dkt. 53; *see also* Opening Br. at 5, 17, 28-29. When the City Defendants made the argument in this case, Class Counsel extensively researched cases and legislative history, and drafted two briefs to counter the argument. *See* Dkt. 54; Dkt. 62. Similarly, the City Defendants' statement that "the facts regarding defendant Lenich's criminal activity were not in dispute" is misleading, given that the first argument in their motion to dismiss asserted that Plaintiffs "cannot show the requisite intent on Lenich's part under the Wiretap Act." *See* Dkt. 53 at 13.

The City Defendants do not contest the complexity involved in obtaining and analyzing the ADACS metadata that permitted Class Counsel to identify Class Members by phone number, but nonetheless claim that having these phone numbers gave plaintiffs a "unique advantage." Defs. Br. at 3; *see also* Emery Decl. ¶¶ 4-7, 20-23, 39. Even if these phone numbers conferred some initial benefit, the City Defendants cannot dispute the efforts expended by Class Counsel to trace those numbers to the Class Members themselves, including pressing the City Defendants to search City databases, repeatedly conferring with Stephanie Rosenfeld and Jarret Lemieux, and issuing and following up on 14 subpoenas to phone companies. Emery Decl. ¶¶ 44-46.

### 3. Quality of Representation

The City Defendants do not contest the significant results that Class Counsel obtained for the Class. Due to Class Counsels' efforts, 162 Class Members, roughly half of the total Class, have filed claims and will each receive between $6,000 and $15,000 if final approval is granted.

*See* Boub Decl., September 20, 2021 ¶ 4. Nor do they dispute that each of these Class Members would have received nothing had Class Counsel not stepped forward to file this case on the last day before the statute of limitations expired. Emery Decl. ¶ 13. And they cannot seriously contest this Court's own assessment that "Plaintiffs' attorneys are well regarded and highly capable, and they have demonstrated throughout this litigation that they are competent to represent the class." *Preliminary Approval Opinion*, 2021 WL 508339, at *5. Instead, the City Defendants attempt to turn Class Counsel's high reputation against it, claiming that because of its experience ECBAWM "had little to gain" from co-counseling with Wiggin. Defs' Br. at 8. Not only does this ignore the significant litigation, class-action defense, and Wiretap Act experience that Wiggin brought to bear, *see* Glasser Decl. ¶¶ 8-9, it also ignores the practical reality that Wiggin already represented Jarrett Lemieux, one of the wiretapped individuals, and so necessarily brought immense practical and factual assistance to the case.

### 4. Fee in Relation to Settlement

The City Defendants do not, and cannot, argue that Class Counsel's requested one-third fee award is unreasonable in relation to the Settlement. As the Court already recognized, "[i]t is very common to see 33% contingency fees in cases with funds of less than $10 million." *Preliminary Approval Opinion*, 2021 WL 508339, at *6. Here, approximately 40% ($1,286,500) of the Settlement Fund will be distributed to Class Members. *See* Boub Decl. ¶ 7. Class Counsel's fee request does not come at the expense of the Class. Rather, any unclaimed or unawarded portion of the Settlement Fund will revert to the City. *See id*. ¶ 6; Settlement Agmt., Dkt. 106-2 ¶ 49. This, too, counsels in favor of approval. *See Brack v. MTA New York City Transit*, 2019 WL 8806149, at *4 (E.D.N.Y. Apr. 26, 2019).

### 5. Public Policy Considerations

Class Counsel took on significant risk to bring this novel litigation on behalf of hundreds

of individuals whose communications were illegally intercepted by the City and its employees. This litigation exposed and holds the City accountable for serious infringements of fundamental privacy rights. It is in the public interest to incentivize well-qualified counsel to take on cases like this, which in turn incentivizes the City and other government entities to improve privacy protections for the benefit of all people. *See Red Bull Assocs. v. Best W. Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir. 1988) (describing the "strong federal public policy favoring enforcement of the civil rights laws so important to the advancement of modern society"). The City Defendants articulate no reason why Plaintiffs' requested fee is contrary to public policy.

### D. The Lodestar Check Supports the Requested Fee Award

"[B]ecause the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable." *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 505-06 (S.D.N.Y. 2009). Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger*, 209 F.3d at 50.

The City Defendants' quibbles about the hours expended by Class Counsel are meritless. The number of hours City Defendants' counsel worked has no bearing here because the roles of plaintiffs' and defense counsel differ considerably, particularly in a class action. For example, Class Counsel took on finding and hiring an administrator, pursuing additional discovery to identify class members, overseeing the notice and claim process, and drafting the motions for preliminary and final approval. It is equally irrelevant that the City Defendants produced the bulk of the discovery—Class Counsel had to review everything the City Defendants produced, which takes considerably longer. And the City Defendants' gripes about two firms representing the Class ignore the unique experience and contributions each firm brought.

Class Counsel's hourly rates are also reasonable. Courts in this district regularly accept

of individuals whose communications were illegally intercepted by the City and its employees. This litigation exposed and holds the City accountable for serious infringements of fundamental privacy rights. It is in the public interest to incentivize well-qualified counsel to take on cases like this, which in turn incentivizes the City and other government entities to improve privacy protections for the benefit of all people. *See Red Bull Assocs. v. Best W. Int'l, Inc.*, 862 F.2d 963, 967 (2d Cir. 1988) (describing the "strong federal public policy favoring enforcement of the civil rights laws so important to the advancement of modern society"). The City Defendants articulate no reason why Plaintiffs' requested fee is contrary to public policy.

### D. The Lodestar Check Supports the Requested Fee Award

"[B]ecause the lodestar is being used merely as a cross-check, it is unnecessary for the Court to delve into each hour of work that was performed by counsel to ascertain whether the number of hours reportedly expended was reasonable." *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 505-06 (S.D.N.Y. 2009). Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Goldberger*, 209 F.3d at 50.

The City Defendants' quibbles about the hours expended by Class Counsel are meritless. The number of hours City Defendants' counsel worked has no bearing here because the roles of plaintiffs' and defense counsel differ considerably, particularly in a class action. For example, Class Counsel took on finding and hiring an administrator, pursuing additional discovery to identify class members, overseeing the notice and claim process, and drafting the motions for preliminary and final approval. It is equally irrelevant that the City Defendants produced the bulk of the discovery—Class Counsel had to review everything the City Defendants produced, which takes considerably longer. And the City Defendants' gripes about two firms representing the Class ignore the unique experience and contributions each firm brought.

Class Counsel's hourly rates are also reasonable. Courts in this district regularly accept

lodestar calculations based on similar rates for cross-check purposes. *See Blondell*, 2021 WL 4173679, at *5 (calculating lodestar in copyright action based on attorney rates of $600 and $850 and citing 2018 survey showing that rates in major metropolitan areas including New York City averaged $994 for partners); *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) (in performing cross-check, noting rates for attorney and support time ranging from $125 to $880 per hour "are not extraordinary for top New York law firms"); *Tanski v. AvalonBay Communities, Inc.*, 2020 WL 2733989, at *2 (E.D.N.Y. May 26, 2020) ("[C]ourts have approved lodestars in class action settlements based on billable rates of between $405 and $790 for partners and between $270 and $500 for associates."); *Rasulev v. Good Care Agency, Inc.*, No. 16 Civ. 1993, Dkt. 70, at 16-24 (E.D.N.Y. July 28, 2017) ($930 hourly rate).

"In any case, even were the Court to conclude that the rates reflected contingency risk—or that the rates were, for other reasons, higher than reasonable—the effect would simply be to render the lodestar multiplier . . . artificially low. Even were the true multiplier higher (say, 2.5), it would still be well within the reasonable range of similar awards, and the Court would still approve the fee request." *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 504 (S.D.N.Y. 2017). Here, Class Counsel's lodestar results in a multiplier of 1.08, Emery II Decl. ¶ 9, which is significantly lower than in many common-fund cases. *See, e.g, In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d at 497 ("Lead Counsel's lodestar multiplier of 1.39 is at the lower range of comparable awards in common fund cases."); *Sykes v. Harris*, 2016 WL 3030156, at *16 (S.D.N.Y. May 24, 2016) ("The multiplier here is 3.3, which is consistent with other cases in the Second Circuit."); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 368-69 (S.D.N.Y. 2002) (awarding one third of $11,500,000 settlement resulting in a multiplier of 4.65).

9

## II. PLAINTIFFS SHOULD BE AWARDED REASONABLE COSTS

Contrary to the City Defendants' assertion, the Settlement Agreement provides that costs approved by the Court will be paid from the Settlement Fund. *See* Settlement Agmt. ¶ 43 ("[T]he City agrees to pay up to Three Million, Two Hundred Thousand Dollars ($3,200,000.00) which shall be used to pay damages to Class Members . . . , less the Administrative Costs, payments to Class Representatives, and the attorney's fees *and costs* approved by the Court.") (emphasis supplied). Those costs amount to $31,655.20 for filing fees, process servers, court reporters, discovery management, and legal research—charges that were actually incurred and would ordinarily be passed along to paying clients. Emery II Decl. ¶ 7; Glasser II Decl. ¶ 6.

"Counsel in common fund cases may recover those expenses that would normally be charged to a fee-paying client" and courts may approve such recovery based on a review of "Class Counsel's description of these costs and expenses, broken down by category." *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 271 (S.D.N.Y. 2020). "Since district courts are not required to engage in the tedious nit-picking of requested fees in common fund cases, scrutiny of requested expenses, which ordinarily comprise a fraction of fees, is even less necessary." *In re KeySpan Sec. Litig.*, 2005 WL 3093399, at *19 (E.D.N.Y. Sept. 30, 2005). No reason exists to withhold reimbursement of these reasonable costs.

## III. ENTRY OF JUDGMENT IS REQUIRED

Entry of Judgment is required to fund the Settlement. Under the Settlement Agreement, the effective date of payment (when the City must deposit the Settlement Fund with the Class Administrator for distribution) "is fifteen (15) business days following either the expiration of the time for an appeal of the Final Approval Order, or if an appeal is taken, the affirmance of the Court's Final Approval Order." Settlement Agmt. ¶ 21. Absent entry of judgment, the time for an appeal will not start to run and the settlement will not be timely funded.

## CONCLUSION

The Plaintiffs respectfully request that the court approve Plaintiffs' request for an award of attorneys' fees of $1,066,666.66 and for reimbursement of $31,655.20 in necessary expenses.

Dated: September 20, 2021
       New York, New York

                                        EMERY CELLI BRINCKERHOFF
                                        ABADY WARD & MAAZEL LLP

                                        _____/s_____
                                        Richard D. Emery
                                        Samuel Shapiro
                                        Scout Katovich

                                        600 Fifth Avenue, 10th Floor
                                        New York, New York 10020
                                        (212) 763-5000

                                        WIGGIN AND DANA, LLP
                                        James I. Glasser
                                        Tadhg Dooley

                                        437 Madison Avenue, 35th Floor
                                        New York, New York 10022
                                        (212) 490-1700

                                        *Attorneys for Plaintiffs*