| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | |
| DANIELLE ROSENFELD and VINCENT GARCIA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>TARA LENICH; CITY OF NEW YORK; LU-SHAWN M. THOMPSON, as Administrator of Estate of Kenneth P. Thompson; ERIC GONZALEZ; MARK FELDMAN; WILLIAM SCHAEFER; BRIAN DONOHUE; WILLIAM POWER; MICHAEL DOWLING; JOSEPH PIRAINO; and ROBERT KENAVAN,<br><br>Defendants. | **MEMORANDUM & ORDER**<br>18-CV-6720 (NGG) (PK) |

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is Plaintiffs' motion to certify the final class settlement agreement (the "Settlement Agreement" or the "Agreement") to rectify the violated privacy rights of hundreds of New Yorkers, caused by a gross abuse of the public trust by Tara Lenich, a disgraced former prosecutor in the Kings County District Attorney's Office. The court previously granted preliminary approval of the settlement, directing notice to class members, and scheduling a fairness hearing. *See Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *4 (E.D.N.Y. Feb. 11, 2021) (Dkt. 97).

Plaintiffs ask the court to (1) grant final approval of the Settlement Agreement; (2) certify the settlement class, appointing Named Plaintiffs Danielle Rosenfeld and Vincent Garcia as class representatives and appointing Emery Celli Brinckerhoff & Abady LLP ("Emery Celli") and Wiggin and Dana LLP ("Wiggin") as class counsel; (3) approve a service award of $15,000 for each

1

Named Plaintiff; and (4) approve attorneys' fees of $1,066,666.66 and costs of $31,653.20. (*See* Not. of Mot. for Final Approval of Class Settl. (Dkt. 105); Pls.' Mem. in Supp. of Class Settl. ("Mot.") (Dkt. 107).) Defendants oppose Plaintiffs' request for attorneys' fees and costs but support final approval in all other respects. (Defs.' Opp. to Attorneys' Fees and Costs ("Opp.") (Dkt. 111).)

For the reasons that follow, Plaintiffs' motion is GRANTED in full.

## I. BACKGROUND

The court assumes familiarity with the facts and history of this case, discussed in further detail in the court's prior opinion. *See Rosenfeld*, 2021 WL 508339, at *1-2. The following provides the facts necessary to decide the pending motion.

Former Kings County Assistant District Attorney Tara Lenich forged judicial orders and search warrants to illegally wiretap the cell phones of Stephanie Rosenfeld and Detective Jarrett Lemieux from June 2015 to November 2016. All told, Lenich's wiretaps intercepted communications from over 300 unique numbers.

The law firms Emery Celli and Wiggin filed suit against Lenich, the City of New York, and others on behalf of Stephanie Rosenfeld and Det. Lemieux, respectively. Recognizing that many others had viable claims under the Wiretap Act, 18 U.S.C. § 2520, *et seq.*, Emery Celli and Wiggin brought this class action, with Danielle Rosenfeld and Vincent Garcia as named plaintiffs, on behalf of themselves and all other similarly affected persons or entities, against Lenich, the City of New York, and several current and former employees of the City and the Kings County District Attorney's Office. The class complaint was filed on November 26, 2018, one day before the applicable statute of limitations expired.

In April 2019, Defendants moved to dismiss, arguing, *inter alia*, that the individual Defendants were entitled to qualified immunity and that municipalities could not be held liable under the Wiretap Act, which applies only to violations committed by a "person." (*See* Defs.' Mot. to Dismiss (Dkt. 53).) Over the following months, the parties exchanged written discovery, litigated issues relating to electronic discovery, and jointly sought to determine the size of the class by interviewing a wiretap metadata expert. They also participated in a settlement conference with Magistrate Judge Peggy Kuo.

In January 2020, the Named Plaintiffs and Lenich agreed to settlement terms, leaving the City of New York and current and former employees of the City and the Kings County District Attorney's Office as defendants. (*See* Not. of Voluntary Dismissal (Dkt. 78).) Defendants and Named Plaintiffs continued settlement discussions and, in February 2020, reached an agreement in principle. (*See* Mot. to Stay Discovery (Dkt. 85).)

On August 7, 2020, the parties entered the Settlement Agreement. The Agreement requires Defendants to establish a $3.2 million settlement fund, which will be used to satisfy the class members' claims (based on the number of each member's intercepted communications) and pay attorneys' fees and administrative costs. On February 4, 2021, the court granted preliminary approval of the Agreement, certified the class for settlement purposes, appointed Named Plaintiffs to represent the class, appointed Emery Celli and Wiggin as Class Counsel, approved the appointment of a claims administrator, and directed that notice be provided to class members.

Following a robust administrative claims and notice effort, 159 class members filed valid claims, representing 48% of the 331 unique numbers intercepted by Lenich. (*See* Mot. at 10-14.) No class member has objected to or opted out of the Settlement.

Each valid claim provides between $6,000 and $15,000 of compensation.[1] These claims represent a total payout of $1,286,500, including the anticipated service awards of $15,000 to each Named Plaintiff. As a result, each class member will recover thousands of dollars, at or very near to (and in some cases above) the statutory maximum amount that would have been available in an individual lawsuit.

On September 23, 2021, the court held a fairness hearing as to the Settlement Agreement and heard oral argument on the instant motion concerning Class Counsel's requested attorneys' fees and costs.

## II. DISCUSSION

Plaintiffs ask the court to (1) grant final approval of the Settlement Agreement; (2) certify the settlement class, appointing Named Plaintiffs as class representatives and appointing Emery Celli and Wiggin as class counsel; (3) approve a service award of $15,000 for each Named Plaintiff; and (4) approve attorneys' fees of $1,066,666.66 and costs of $31,653.20. Defendants do not oppose the first three requests and expressly support final approval of the Settlement Agreement. (*See* Opp. at 1-2.) Accordingly, for reasons discussed on the record at the fairness hearing and identified in the preliminary settlement approval, the court finds the Settlement Agreement fair, reasonable, and adequate, and grants final approval. *See* Fed. R. Civ. P. 23(e)(2); *Rosenfeld*, 2021 WL 508339, at *4-8. The settlement class is certified with Named Plaintiffs as class representatives and Emery Celli and Wiggin as class counsel, and the service award for each Named

---

[1] Each class member who submitted a valid claim received a certain number of "Award Units," based upon the number of intercepted communications. Individuals with 1 interception will receive $6,000, individuals with between 2 and 10 interceptions will receive $7,500, individuals with between 11 and 100 interceptions will receive $10,000, and individuals with more than 100 interceptions will receive $15,000.

Plaintiff is approved. That leaves only the contested request for attorneys' fee and costs.

### A. Attorneys' Fees

#### 1. Legal Standard

The fees awarded in a class-action settlement "may not exceed what is reasonable under the circumstances." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000).[2] The court follows the clear "trend in the Second Circuit" and considers this fee request "using the 'percentage of the fund' approach, which 'assigns a proportion of the common settlement fund toward payment of attorneys' fees.'" *Hart v. BHH, LLC*, No. 15-CV-4804 (WHP), 2020 WL 5645984, at *5 (S.D.N.Y. Sept. 22, 2020) (quoting *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 430 (S.D.N.Y. 2016)). To determine reasonableness under this approach, courts "consider the six *Goldberger* factors: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Dial Corp.*, 317 F.R.D. at 433 (citing *Goldberger*, 209 F.3d at 50).

As a cross-check on reasonableness, courts often compare the proportionate fee amount to the lodestar multiplier, which should be a reasonable multiple of the total number of hours billed at a standard hourly rate. *See Goldberger*, 209 F.3d at 50. "[W]here used as a mere cross-check," the court need not "exhaustively scrutinize[]" the hours documented by counsel or engage in "the cumbersome, enervating, and often surrealistic

---

[2] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

process of lodestar computation." *Id.* at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Id.*

### 2. Application

Class Counsel request a fee award of $1,066,666.66, which represents 33.3% of the $3.2 million settlement fund. Where, as here, the requested fee totals one-third of a settlement fund under $10 million, courts in this Circuit routinely find that fee well within the range of reasonableness. *See Rosenfeld*, 2021 WL 508339, at *6 (collecting cases); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2013) ("[I]t is very common to see 33% contingency fees in cases with funds of less than $10 million."). Nothing about this case, or this application, brings this fee request outside of that comfortable range of reasonableness.

The *Goldberger* factors confirm the reasonableness of Class Counsel's fee request. First, there is the time and labor expended by counsel: Counsel for both sides engaged in hard-fought, ultimately successful settlement negotiations; Class Counsel, in particular, worked on this case for over three years, expending some 1,682 hours on it in total. Second, there is the magnitude and complexities of the litigation: this matter involved extensive litigation, including novel legal issues like whether municipalities may be held liable under the Wiretap Act, and whether the individual Defendants are entitled to qualified immunity; it also involved practical challenges in analyzing 16-months' worth of intercepted wiretap metadata. Third, and "perhaps the foremost factor," there is the risk of litigation, *Goldberger*, 209 F.3d at 54: the uncertainty as to whether the class may recover under the Wiretap Act from the City, the only real source of recovery for the class, generated significant risk, which the contingency fee arrangement appropriately reflected. Fourth, there is the quality

of representation: Class Counsel are highly capable, well regarded, and well known to this court; here, Counsel first secured the class's ability to seek recovery by filing this action before the limitation period ran out, then obtained a meaningful settlement for them. Fifth, there is the requested fee in relation to the settlement: as discussed, "it is very common to see 33% contingency fees in cases with funds of less than $10 million," *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d at 445; moreover, no "interests of the class members are [] subordinated to the interests of . . . class counsel," because the requested fee does not diminish recovery for any class member, *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995). Sixth, there are the public policy considerations: the fee may incentivize well-qualified lawyers to bring similar common fund cases in the public interest, an interest well served in this case, which exposed weaknesses in the wiretap protocols of the Kings County District Attorney's Office.

The reasonableness of the requested fee award also satisfies the lodestar cross-check. Class Counsel's lodestar is $987,174.50, based on 1,682 hours,[3] which results in a multiplier of 1.08. The hourly attorney rates used to calculate the lodestar ranged from $400 to $900 for Emery Celli and $225 to $750 for Wiggin. Both the lodestar calculation and the multiplier reflect rates and multipliers regularly accepted in this Circuit and well within the range of reasonableness. *See, e.g.*, *Tanski v. AvalonBay Communities, Inc.*, No. 15-CV-6260 (AKT), 2020 WL 2733989, at *2

---

[3] Plaintiffs adequately support their lodestar crosscheck calculations with sworn affidavits from Richard Emery (Partner, Emery Celli) and James Glasser (Partner, Wiggin and Dana). (*See* Decls. of James Glasser (Dkts. 108, 115); Decl. of Richard Emery (Dkt. 114).) These declarations provide a breakdown of the individuals who worked on the matter, their billable rate, and how many hours they worked on it. These affidavits also describe the many steps taken by Class Counsel in this litigation.

7

(E.D.N.Y. May 26, 2020) ("[C]ourts have approved . . . lodestar[s] based on billable rates of between $405 and $790 for partners and between $270 and $500 for associates."); *In re BioScrip, Inc. Sec. Litig.*, 273 F. Supp. 3d 474, 497 (S.D.N.Y. 2017) ("Lead Counsel's lodestar multiplier of 1.39 is at the lower range of comparable awards in common fund cases."); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354, at *4 (E.D.N.Y. June 24, 2010) (noting that rates for attorney and support time ranging from $125 to $880 per hour "are not extraordinary for top New York law firms").

Defendants' arguments to the contrary are unpersuasive. Rather than engage with the *Goldberger* reasonableness factors,[4] Defendants invite the court to elevate the lodestar method above its role as a mere cross-check. The court declines that offer. The percentage-of-the-fund method is the applicable standard, and applied here, this application typifies a routine case, involving a fee request well within the range of reasonableness.

At the fairness hearing, Defendants also proposed a policy-based argument, urging the court to scrutinize this fee application and allocation of unclaimed settlement funds in a different light, because the public fisc ultimately funds the Agreement. But this position would subvert the principles supporting the percentage-of-the-fund method, in which "the settling defendant's focus is on its bottom line, and once that bottom line has been inked, the defendant's interest in how class members and class counsel spend the settlement money dwindles." *Fresno Cty. Empls.' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 70 (2d Cir. 2019)

---

[4] Defendants' opposition argument primarily addresses the third factor, the risk of litigation, stating that Class Counsel overstate this risk, because whether a municipality was liable under the Wiretap Act was not novel. Of course, this position conflicts with Defendants' arguments in its motion to dismiss and at the fairness hearing. Notwithstanding this aboutface, Defendants' half-hearted reasonableness argument fails to counter the weight of Counsel's argument.

("[W]here an attorney has settled a case and created a common fund, we determine what a reasonable fee is from the *plaintiff's* perspective.") (emphasis in original). This, because "fees awarded pursuant to the common-fund doctrine do not extract a tax on the losing party but instead confer a benefit on the victorious attorney for her representation of her client and the class members." *Id.* at 69. Moreover, Defendants' position ignores the important public policy interests that this case illustrates. Reasonable attorneys' fees incentivize quality counsel to take the important, often difficult cases. And it may very well be claims against a municipality—entrusted with the rights of the public—that most warrant a need to incentivize quality counsel to take the risks inherent to bringing a case to rectify rights susceptible to abuse.

### B. Attorneys' Costs

"Counsel in common fund cases may recover those expenses that would normally be charged to a fee-paying client" and courts may approve such recovery based on a review of "Class Counsel's description of these costs and expenses, broken down by category." *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 271 (S.D.N.Y. 2020); *see* Fed. R. Civ. P. 23(h). Here, Class Counsel request a payment for combined costs of $31,655.20, covering discovery management, legal research, process server, court reporter, filing fee, courier, overnight mail, records, and travel. (Pls.' Reply in Supp. of Mot. (Dkt. 113) at 10.) Paying clients routinely reimburse these cost categories in the course of ordinary litigation. *See Bekker*, 504 F. Supp. 3d at 271. Having reviewed these costs in light of the length and circumstances of this case, and Class Counsel's submissions, these costs are reasonable and therefore approved in the requested amount. *See In re KeySpan Corp. Sec. Litig.*, No. 01-CV-5852 (ARR), 2005 WL 3093399, at *19 (E.D.N.Y. Sept. 30, 2005) ("Since district courts are not required to engage in the

9

tedious nit-picking of requested fees in common fund cases, scrutiny of requested expenses, which ordinarily comprise a fraction of fees, is even less necessary.") (citing *Goldberger*, 209 F.3d at 51)).

### III. CONCLUSION

For the reasons stated above, Plaintiffs' (Dkt. 105) motion is GRANTED in full. Final approval of the Settlement Agreement is granted; the class is certified with Danielle Rosenfeld and Vincent Garcia as class representatives and Emery Celli Brinckerhoff & Abady LLP and Wiggin and Dana LLP as class counsel. The $15,000 service award for each Named Plaintifff is approved. The application for attorneys' fees of $1,066,666.66 and costs of $31,653.20 is approved.

SO ORDERED.

Dated:   Brooklyn, New York
         January 19, 2022

    /s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge